AUTOMATIC CONTROL PRODUCTS CORP., Plaintiff and Appellant,

v.

TEL–TECH, INC., a corporation, Industrial Indemnity Company, a corporation, and Cache Valley Dairy Association, Defendants and Appellees.

No. 20422.

Supreme Court of Utah.

Oct. 6, 1989.

---

17. 761 P.2d 566.

18. *Id.* at 569.

John L. McCoy, Salt Lake City, for plaintiff and appellant.

Tom Crowther, Salt Lake City, for defendants and appellees.

HOWE, Associate Chief Justice:

This action was brought by plaintiff Automatic Control Products Corp. (ACP) to recover $25,790.34 it claimed was due on an oral contract with defendant Tel–Tech, Inc. The trial court awarded ACP judgment for only $3,874.81, and ACP appeals.

Defendant Tel–Tech is engaged in the sale and installation of dairy and food processing equipment and machinery and in automating dairies and other food processing plants. Since its inception in 1975, Tel–Tech has often subcontracted with ACP to supply and install electric control panels which serve to turn on and off valves and pumps on the equipment and machinery which it sells. Until this litigation, Tel–Tech and ACP enjoyed a good relationship, with ACP installing approximately 200 panels on various Tel–Tech jobs. Although all contracts between Tel–Tech and ACP have been oral, these parties have not had any significant problems in their dealings with each other over the course of their seven-year business relationship.

In the summer of 1981, Randy Telford, President of Tel–Tech, met with Larry Florence, President of ACP, to discuss the building of panels on a job Tel–Tech was bidding for at the Cache Valley Dairy Association (CVDA) plant at Amalga, Utah. The two men examined some sketches and piping diagrams of the proposed installation. Telford wrote on a piece of paper, "Control Panel Estimates from Larry (ACP)" and beneath that heading listed four kinds of panels that would be needed and a figure opposite each kind, ranging from $3,000 to $10,000 each. Below that was listed an additional panel without any figure opposite it. Telford testified that based on this estimate, the two men determined that ACP could build the required

panels for $31,600 and that he incorporated that figure into his bid to CVDA.

Tel–Tech was the successful bidder, and ACP did later construct and install the required panels. However, the parties are in sharp disagreement as to the contract price. Tel–Tech contends that the two men agreed on $31,600 as a firm figure and that although changes were made as the work progressed, they were largely substitutions which should not have increased ACP's price above the estimate. Florence testified that only price estimates were discussed at their meeting, that ACP billed Tel–Tech on a material and time basis as it had done on previous jobs, and that many changes were made as the CVDA job progressed, increasing ACP's costs. Both men acknowledged that Tel–Tech needed prices from ACP before it could bid the CVDA job. During the course of the work, ACP submitted invoices for payment to Tel–Tech. The latter paid $28,378.94 but refused to pay ACP's final invoices, which would bring the total price to $54,169.28.

After a four-day trial, the trial judge, sitting without a jury, concluded that he could not determine from the evidence "whether plaintiff (ACP) and Tel–Tech entered into a firm bid contract or a time and materials contract." However, the court ruled that ACP was entitled to reasonable compensation for its services and materials, which it determined to be $32,253.75, a figure the court explained was "the mid point between the $37,707 and $33,968 high and low values of the services and materials involved less 10% to reflect prices at the time of contracting and performance." These high and low values had been testified to by defendant's expert, Raldo Lanni. Consequently, judgment was awarded to ACP for the difference between $32,253.75 and $28,378.94, which had already been paid by Tel–Tech to ACP, or a net judgment of $3,874.81.

## I.

■ ACP first contends that the trial court erred in mechanically adopting find-ings of fact and conclusions of law prepared and submitted by counsel for Tel–Tech without modifying or changing them in any respect. This contention finds its basis in *Boyer Co. v. Lignell*, 567 P.2d 1112 (Utah 1977), where we cautioned trial courts not to mechanically adopt findings of fact prepared and submitted by the prevailing party's attorney. ACP points out that there is what appears to be a typographical error and a transposition of figures in the finding which indicate lack of care and circumspection by the trial court. We find no error. There is no indication from the record here that the trial judge failed to adequately deliberate and consider the merits of the case. The errors in the findings pointed out by ACP do not render the findings in any way ambiguous. After the trial, the court took the case under advisement, allowing both parties to submit memoranda, and later requested both parties to submit proposed findings of fact and conclusions of law. The fact that the trial court did not completely agree with the contentions made by either party would indicate that there was no "mechanical" adoption of the theory or evidence of either party.

■ Nor was there any error in the failure of the trial court to notify ACP's counsel promptly after he had signed his findings of fact and conclusions of law and the judgment. Our rules do not require the court to give notice but put the burden on counsel to check periodically with the clerk of the court as to the date of entry of the findings and judgment so that post-trial motions may be timely filed.[1]

## II.

ACP assails the findings of fact and conclusions of law made by the trial court in several respects.

■ First, ACP contends that the trial court erred in not awarding it as a base figure $31,600, which was the estimate giv-

1. See, however, Utah Rule of Civil Procedure 58A(d), which requires the prevailing party to promptly give notice of the signing or entry of judgment to all other parties and to file proof of service of such notice with the clerk of the court.

en by ACP to Tel–Tech, and then adding to that figure the cost of all extra items not included in the estimate. We conclude that the trial court was justified in not having done so since not all of the panels on the estimate were built. Substitutions were made for some of the panels which were not necessarily of equal value. However, three panels listed on the estimate were built, and ACP's argument as to those three panels is sound. Since it is Tel–Tech's position that the parties firmly agreed on prices for these three panels and ACP does not dispute these prices, the trial court should have used those agreed-upon prices instead of resorting to Lanni's expert opinion of the reasonable and fair value of the three panels. The receiving panel was listed on the estimate at $3,000, but the trial court awarded the slightly lower sum of $2,985.50. Similarly, the main panel was listed on the estimate at $10,000. Yet the trial court awarded only $8,246. The third panel, a dual eductor panel, was included in the estimate at $6,000 according to Telford. But Lanni and the trial court fixed a value of only $4,787.50. The judgment in favor of ACP should be increased by those differences which total $2,981, since it is Tel–Tech's position that these estimated amounts were fair and reasonable and had been firmly agreed upon. No changes or substitutions were made affecting them, as was the case with the other panels listed on the estimate.

Second, ACP contends that because Tel–Tech paid invoices totalling $28,378.94 submitted by it as the job progressed without any objection, Tel–Tech cannot now object to or question the amounts charged for material and labor shown on those invoices. Thus ACP asserts that it was error for the trial court to allow Tel–Tech's expert to testify and for the trial court to award lesser amounts for the items shown on the paid invoices. This argument might be valid if it were not Tel–Tech's position that there was a firm bid and commitment to do the job for $31,600. Viewing the payments of the invoices in that light, we cannot hold as a matter of law that defendants were obligated to question each invoice as rendered since defendant could

have reasonably believed that succeeding invoices would not bring the total cost above the $31,600 estimate. Moreover, Telford testified that ACP had in the past experienced cash flow problems and that Tel–Tech had on those occasions made advance payments to alleviate ACP's problems.

Third, ACP argues that in reaching its decision, the trial court completely ignored the previous course of dealings between the parties. The evidence was undisputed that on prior jobs there was "give and take" between the parties when ACP's costs exceeded its original estimate furnished to Tel–Tech. In those instances, Tel–Tech would endeavor to absorb additional costs incurred by ACP or Tel–Tech would go to its customer and endeavor to get it to agree to an increase. By this method, ACP and Tel–Tech in the past had been able to resolve any increases in ACP's cost because of changes or additions made as the job progressed. It appears that the trial court did not ignore this course of dealing and, in fact, gave ACP the full benefit of that course of dealing by endeavoring to award to it the fair and reasonable value of its materials and labor. It did not restrict ACP to the $31,600 estimate which Tel–Tech, throughout the trial, strenuously argued was the extent of its liability. Telford testified that the parties had endeavored to find means by which ACP's additional costs could be absorbed and that they met with CVDA for that purpose, but to no avail. We find no error in this regard.

Fourth, ACP complains that the trial court, in making its award of judgment, erred in reducing by 10 percent the average between the reasonable high and low values placed on the panels by Raldo Lanni, an expert witness called by Tel–Tech, which average amounted to $35,837.50. The trial court reduced that amount by 10 percent, or $3,583.75, "to reflect prices at the time of contracting and performance." ACP assails the 10 percent reduction on the ground that there is no basis in the evidence for it. We agree. The 10 percent reduction was apparently made on the ba-

sis of testimony by Lanni that he "guessed" there had been price increases in materials from 1980, when ACP built some panels on another job for Tel–Tech in Tempe, Arizona, to the time of the trial of the instant case in April 1984. He then qualified that statement by adding that the price of some materials had actually been reduced during that time.

Lanni's testimony does not support the 10 percent reduction made by the court because ACP's work and materials were furnished in late 1982 and early 1983, much closer to the time of trial than the 1980 Tempe job. Furthermore, Lanni was testifying only concerning the price of materials, and he based his estimate of reasonable value partly on prices quoted in the June 1983 catalog of a supplier of some of the materials used in the building of the panels. Lanni was referring only to the price of materials and did not express any opinion on increases in the price of labor during the same period. The cost of labor was a significant part of ACP's total cost of building the panels. We therefore conclude that the judgment awarded to ACP should be increased by the amount of the 10 percent reduction or $3,583.75.

### III.

■ Defendant Industrial Indemnity Co., at the instance of Tel–Tech, wrote a bond to insure payment for materials and labor furnished to CVDA's plant as required by Utah Code Ann. § 14–2–1 (1953). ACP made Industrial Indemnity a defendant to this action and sought to recover upon the bond, together with a reasonable attorney fee pursuant to § 14–2–3, which provides:

> In any action brought upon the bond provided for under this chapter the successful party shall be entitled to recover a reasonable attorney's fee to be fixed by the court, which shall be taxed as costs in the action.

In its answer to ACP's complaint, Industrial Indemnity admitted the existence of the bond and that it had not paid ACP anything under it. Also, early in this action, ACP, Tel–Tech, and Industrial Indemnity entered into a written stipulation that a mechanic's lien filed by ACP against CVDA's plant would be released and that the bond written by Industrial Indemnity, a copy of which was attached to the stipulation, was

> validly issued and applicable in this action. If not first paid by Defendant Tel–Tech, Inc., the principal named in said bond, or otherwise first paid; [sic] then Defendant, Industrial Indemnity Company, as surety, will be liable for and pay any judgment within the financial limits of such bond that is obtained by Plaintiff in this action on the merits of its claims, if that shall occur.

At trial, the court admitted without any objection from Tel–Tech an exhibit showing a reasonable attorney fee for ACP. However, in rendering judgment for ACP several months after the close of the trial, the court declined to award ACP any attorney fees based on its finding of fact that

> [n]o evidence was introduced at trial of issuance by defendant Industrial Indemnity Company of a surety bond insuring payment to material men and laborers upon the CVDA job or the contract between plaintiff and Tel–Tech.

Tel–Tech defends the above finding on the ground that while the existence of the bond was admitted in the answer and in the stipulation, ACP "did not introduce such pleadings or any other evidence of the existence of such bond or any right to recover under it." In support of its position, Tel–Tech relies upon *Massey v. Haupt,* 632 P.2d 824 (Utah 1981), where we upheld a trial court's refusal to give a jury instruction based upon admissions in the court's file but not offered or admitted into evidence during the trial. We explained our ruling by stating, "When the admissions are offered into evidence they become subject to all pertinent objections to admissibility which may be interposed." *Id.* at 826.

That case has no application here in view of the broad stipulation of the parties. Here, the parties stipulated that the bond, a copy of which was attached to the stipulation, "is validly issued and applicable in this action" and that if Tel–Tech did not pay any amount awarded in favor of ACP, Industrial Indemnity would do so up to the

limits of the bond. In view of the breadth of that stipulation and the attachment of a copy of the bond, the trial court erred in finding that the existence of a bond had not been proved at trial. Unlike the admissions contained in the file in *Massey v. Haupt,* nothing remained to be proved concerning the existence of the bond or the liability of Industrial Indemnity thereon. The stipulation was before the court, and it foreclosed any objection which Tel–Tech or Industrial Indemnity could have thereafter raised concerning the bond. We therefore conclude that upon remand of this case, the trial court should award its modified judgment against Industrial Indemnity as well and consider ACP's entitlement to a reasonable attorney fee under section 14–2–3 for the trial and this appeal.

### IV.

■ Last, ACP contends that the trial court erred in striking its exhibits 4–P through 10–P after the close of the trial. These exhibits were invoices prepared by ACP and sent to Tel–Tech. They were offered the first morning of the trial and were received into evidence subject to review by defendant's counsel for authenticity and correctness. After the noon recess of the first day of trial, the court asked Tel–Tech's counsel if he had had an opportunity to review the exhibits. He replied that he had. The trial court then ruled that "the reservation is overridden by the Court. Those are all admitted that were subject to that reservation." No further objection was made by counsel for Tel–Tech to these exhibits until the end of the trial when both parties had rested. Then the trial judge seemed to question whether he had unconditionally admitted the exhibits, stating, "My ruling at the time was I would admit them provisionally, but being supported by invoices, which has never been done...."

■ Thereafter, in written argument submitted to the court while it had the case under advisement, ACP pointed out that all of said exhibits had been admitted and the trial court's original qualification had been satisfied. However, in its findings of fact,

the trial court ruled that the exhibits were not admissible and were not to be given any weight. We agree with ACP that the trial court abused its discretion in reversing its ruling on admission of the exhibits after the close of the trial and at a time when ACP had no opportunity to furnish supporting data which the trial court seemed to think was necessary. However, we do not find that the error was prejudicial to ACP in view of the fact that the trial court's award of judgment was not based on a time and materials basis, as contended for by ACP, but was based on the reasonable value of the labor and materials furnished by ACP. The existence or nonexistence of the exhibits was not material to that determination. There was no dispute that the excluded exhibits had been sent to Tel–Tech and that some of them had been paid.

### V.

We have considered other points of error raised by ACP but find them to be without merit.

The judgment rendered below is reversed, and the case is remanded to the trial court to increase the amount of the judgment in accordance with this opinion.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (concurring in the result):

I concur in the disposition of the case made by the majority. However, I depart from the majority in my appraisal of the level of scrutiny the trial court gave the findings of fact and conclusions of law prepared by counsel for Tel–Tech.

It is certainly true that a trial judge need not make any emendations in proposed findings of fact and conclusions of law to demonstrate that he or she has not abdicated the decision-making function to the lawyer who prepared the document. However, here the court signed proposed findings that included a statement that "[n]o evidence was introduced at trial ... of a surety bond" when this was not the case, and a

ruling that exhibits previously admitted should be rejected, a ruling which was manifestly incorrect. Moreover, at the time the trial court asked the parties to submit their proposed findings, the court had not decided how the case was to come out; therefore, the parties had no guidance from the trial court as to how to craft their findings. It can be assumed that as a result, each party prepared findings that were favorable to it on all points. The foregoing facts give me pause and suggest that the trial court may have been less than assiduous in reviewing the proposed findings, perhaps simply signing those proposed by the party that prevailed on the basic issues.

Trial judges are certainly entitled to ask the assistance of counsel in preparing findings of fact and conclusions of law. There is some danger that in the press of business, they may come to rely too heavily on these proposals and inadvertently permit counsel to inject findings that may not be entirely in conformity with the judge's views or that may deal with issues the judge has not even thought about.

The finding of facts "is an important part of the judicial function," one that is designed to flesh out the rationale for the decision and one that "the judge cannot surrender ... to counsel." 9 Wright & Miller, *Federal Practice and Procedure* § 2578, at 705 (1971) [hereinafter Wright and Miller]. As the United States Supreme Court has noted, findings of fact prepared by the court are "drawn with the insight of a disinterested mind" and are "more helpful to the appellate court" than those prepared by counsel. *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964). It is for this reason that the federal courts appear to have almost uniformly adopted the rule that while findings prepared by counsel are sufficient under the federal analogue to Utah Rule of Civil Procedure 52, appellate courts "will feel freer in close cases to disregard a finding or remand for further findings if the trial court did not prepare them him [or her] self." 9 Wright & Miller, at 707; *see* Utah R.Civ.P. 52(a);

*see, e.g., Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation,* 616 F.2d 464 (10th Cir.1980); *Kelson v. United States,* 503 F.2d 1291 (10th Cir.1974).

I know that I apply a similar standard in reviewing findings prepared by counsel, and I suspect that other members of this Court do the same, although to my knowledge, we have never said so. In light of this fact and the rule stated above, trial courts would be well advised to be vigilant in guarding against the tendency to view findings as a detail to be dealt with as expeditiously as possible, rather than as a fundamental part of the decisional process, one that goes to the heart of its integrity. In the same vein, counsel preparing proposed findings and conclusions should be cautious lest in their zeal, they incude proposals that may undermine the integrity of the judgment they hope to obtain.