Trisha L. **WEST, Plaintiff and Appellant,**

v.

**GRAND COUNTY and Elaine Coates, individually and as County Attorney, Defendants and Appellees.**

No. 960143.

Supreme Court of Utah.

July 11, 1997.

Erik Strindberg, Ralph E. Chamness, Salt Lake City, for plaintiff and appellant.

Christian W. Nelson, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Chief Justice:

Trisha L. West appeals to this court from a trial court order denying her an extension of time within which to file a notice of appeal in the underlying case. We reverse the trial court's denial of West's motion and remand for further proceedings consistent with this opinion.

We briefly review the facts before turning to the standard of review and our analysis. West filed her initial complaint against Grand County and Elaine Coates, the former Grand County Attorney (collectively, "the County"), in federal court in 1987. To preserve her state law claims in the event of a dismissal by the federal court, West subsequently filed a complaint in state court. After a one-and-a-half-year stay pending the outcome of the federal proceedings, and only one month before the case was scheduled to go to trial in state court, the County moved for summary judgment.

After a hearing, the trial court granted the County's motion for summary judgment. The court subsequently considered two post-judgment motions. The first, filed by West, was a motion to amend judgment. The second motion, filed by the County, was a motion to strike the affidavits accompanying West's motion to amend the judgment. On April 13, 1995, the trial court signed orders denying West's motion to amend the judgment and granting the County's motion to strike the affidavits. These orders were entered on April 17, 1995, but were apparently never sent to West, although that was required by Utah Rule of Civil Procedure 77(d).[1]

---

1. The County prepared the order denying West's motion to amend the judgment but failed to provide extra copies to the court for mailing to opposing counsel. West prepared the order

Upon learning of the entry of the orders in early June of 1995, West moved, under Utah Rule of Appellate Procedure 4(e), for an extension of time in which to file her notice of appeal. That rule provides that a trial court may extend the time for appeal if the movant can show good cause or excusable neglect for missing the filing deadline. Utah R.App. P. 4(e). West's motion for an extension was based on her failure to receive notice of the entry of the orders. Specifically, she raised (i) the clerk's failure to send notice to her as required by Utah Rule of Civil Procedure 77(d); (ii) the County's failure to file mailing copies with the clerk, also as required by rule 77(d), to enable the clerk to comply with the rule; and (iii) her excusable failure to check periodically with the clerk to determine whether an order had been entered.[2] The trial court granted the extension, without giving the County time to file its opposition.[3] The County filed its opposition after the motion was granted.

West proceeded with her appeal, and the County moved this court for summary disposition. We denied the motion but remanded the matter to the trial court for clarification as to whether the trial court had considered the County's opposition. The trial court acknowledged that it had not considered the County's opposition and, after due consideration of both parties' filings, reversed its prior ruling and denied West's motion for an extension.

In denying West's request for an extension, the trial court was called upon to interpret Utah Rule of Civil Procedure 77(d), which provides, in pertinent part, that the clerk of the court shall mail notice of entry of orders to the parties, but further provides

that "[l]ack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed." Utah R. Civ. P. 77(d). The trial court determined that this language prevented it from granting West's request for an extension of time to file her appeal under the facts presented. West now appeals this order.

■ We first state the standard of review. Here, two issues are presented. First, the trial court concluded that rule 77(d) barred it from finding "excusable neglect" where the claim was based on the failure of the clerk to notify a party of a ruling. Second, because that failure was the factual predicate for West's motion, the court concluded that she had not shown "excusable neglect," within the meaning of appellate rule 4(e). The first of these questions is a question of law—does rule 77(d) preclude a finding of excusable neglect based upon the failure of a clerk to mail the required notice? This ruling is one of pure law, the abstract legal effect of the rule's language. It is therefore reviewable for correctness. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

■ The second question, whether the facts presented warrant a finding of excusable neglect, is also a legal ruling, which we review for correctness. As we said in *Pena*, however, that is only the beginning of the standard of review question, not the end. *Id.* at 937. Unlike the interpretation of the effect of rule 77(d), the question of whether any given set of facts constitutes "excusable neglect" under appellate rule 4(e) is highly fact dependent. Moreover, the situations

granting the County's motion to strike affidavits as a proposed order and attached it as an exhibit to her objection to the County's proposed order. A copy of this signed order was not mailed to West because she had not submitted mailing copies, having not anticipated that the court would simply sign the exhibit.

2. West's argument here involved her reliance on the sixmonth delay in issuing and entering orders that was common throughout the four-year history of this case. For example, the hearing on the County's motion for summary judgment was held on July 19, 1993. The trial court did not issue its ruling until January 26, 1994. Again, after receiving a notice to submit on the issue of the

form of the County's proposed judgment on April 25, 1994, the trial court did not issue its ruling until November 9, 1994.

In contrast, the order from which West seeks leave to appeal was signed on April 13, 1995, only two days after the County notified the court that it accepted the form of the proposed order that West submitted when she objected to the County's proposed order.

3. The trial court apparently misread appellate rule 4(e) and granted the motion ex parte, before the County had even filed its motion in opposition.

that might be presented to a trial court under this rubric are so varied and complex that "no rule adequately addressing the relevance of all these facts can be spelled out." *Id.* at 939. For that reason, trial courts must have broad discretion in granting or denying such motions.

■ Applying these standards of review, we move to the merits of the issues before us. On the effect of rule 77(d), the rule states, "Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed." Utah R. Civ. P. 77(d). West makes several detailed arguments involving the complex legislative history of the federal courts' adoption of the federal counterpart to this rule. There is, however, no reason to examine the federal legislative history, or even the history of this state's adoption of the rule, absent an ambiguity in the language of the rule. *See World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994). The language of the rule is clear. It prohibits any court from finding excusable neglect based solely on a court clerk's failure to mail notice.

To the extent that the trial court so held, we affirm its legal ruling. However, to the extent that the trial court further concluded that this language precluded any consideration of the clerk's failure to send notice in determining the existence of "excusable neglect" under appellate rule 4(e), we conclude that it erred. The rule bars only the granting of an extension solely because of the clerk's failure to send notice. It does not mean that in a situation where the clerk failed to send notice, no other facts can be combined with that fact to lead to the conclusion that there was excusable neglect. We cannot determine with certainty whether the trial court's denial of the extension was based on this reasoning, but it seems likely. To the extent that the court felt it was bound to so rule, it was in error.

The next question is whether, even if it made this legal error, its ruling was harmful to West. That requires us to move to the question of whether West presented other facts that, combined with the failure of the clerk to send notice, might support a sustainable finding of excusable neglect. If such facts are present, then we must vacate the trial court's order and remand the matter to permit the court to consider whether the facts warrant a finding of excusable neglect. If so, the trial court is free to enter an order granting the extension.

In addition to claiming excusable neglect because of the clerk's failure to mail notice, West further argued that her neglect in failing to check with the clerk periodically to determine whether an order had been entered was excusable because she had been lulled into inaction by the general practice of the court in taking some six months to issue orders. In light of the clerk's failure to mail notice, West argued that her neglect in not finding out about the order until nearly a month and a half after its entry was excusable because she had been lulled into inaction by the court's general practice.

■ Clearly, West's failure to check with the clerk was neglect. "Our rules ... put the burden on counsel to check periodically with the clerk of the court as to the date of entry...." *Automatic Control Prods. Corp. v. Tel–Tech, Inc.*, 780 P.2d 1258, 1260 (Utah 1989). Again, were no other extenuating facts present, an attorney's failure to check with the clerk should not alone suffice to support a finding of excusable neglect. But the question of whether such conduct is excusable is an equitable one, and such a determination should take into account all relevant circumstances surrounding the party's neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993) (interpreting term "excusable neglect" in context of late filing provision of bankruptcy law).

■ Both the United States Supreme Court and the United States Court of Appeals for the Tenth Circuit have articulated four factors relevant to a determination of excusable neglect:

"[i] the danger of prejudice to [the nonmoving party], [ii] the length of the delay and its potential impact on judicial proceedings, [iii] the reason for the delay,

including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith."

*City of Chanute v. Williams Natural Gas Co.,* 31 F.3d 1041, 1046 (10th Cir.1994) (bracket numbering added) (quoting *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498), *cert. denied,* 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995). While these factors are not dispositive, they are helpful in determining the equities of whether a finding of excusable neglect is warranted.

■ A factor we find relevant to this case is West's claim that her failure to fulfill her duty to check with the clerk was based, at least in part, on the six-month delay in issuing and entering orders that was common during the four years of proceedings in this case. The United States Court of Appeals for the Tenth Circuit has noted, "If the district court induced detrimental reliance by an appellant resulting in the filing of an untimely notice of appeal, we may allow the appeal in the 'best interests of justice' given such unique circumstances." *Senjuro v. Murray,* 943 F.2d 36, 37 (10th Cir.1991) (per curiam). Similarly, the United States District Court for the Southern District of New York has held that "misplaced reliance" by an attorney on the court's regular practices could constitute excusable neglect if counsel was "lulled ... into a lapse in their own professional efforts to monitor the course of a proceeding." *Brignoli v. Balch Hardy & Scheinman,* 739 F.Supp. 936, 938 (S.D.N.Y.1990).

We are unwilling, nonetheless, to announce a rule that a trial court's regular six-month delay in issuing and entering orders is a per se excuse for trial counsel's failure to fulfill the duty to check with the clerk periodically to determine whether orders have been entered. We can imagine circumstances where such delays alone would not constitute an excuse for trial counsel's neglect. Therefore, we must remand the case to the trial court to determine whether, given the factors outlined above, the circumstances in this case warrant a finding of excusable neglect.

We vacate the ruling below and remand for further proceedings.

HOWE, DURHAM and RUSSON, JJ., concur.

STEWART, Associate Chief Justice, dissenting:

I would hold the appeal to be valid and direct the case to proceed on the merits. In my view, *Senjuro v. Murray,* 943 F.2d 36, 37 (10th Cir.1991), and *Brignoli v. Balch Hardy & Scheinman, Inc.,* 739 F.Supp. 936, 938 (S.D.N.Y.1990), are ample authority for that position and will, no doubt, control the jurisdictional issue. When the district court is required now for the third time to rule on the issue, in my view, it is simply nonsensical to remand this case once again to the district court for consideration of the issue before this Court. Such a ping-pong game between this Court and the district court simply has no point.