2009 UT 39

Marcia Kay Neil JONES and Victor Kent Jones, joint personal representatives of the Estate of Llewellyn Stone Jones, for themselves and the other heirs of Llewellyn Stone Jones, Plaintiffs and Appellants,

v.

LAYTON/OKLAND, Southern Steel Company, Beneco Enterprises, Inc., DMJM, GSL Electric, Team Mechanical, Inc., and Does 1–10, Defendants and Appellee.

No. 20070813.

Supreme Court of Utah.

July 14, 2009.

Rodney R. Parker, Frederick Mark Gedicks, Salt Lake City, for appellants.

Cory D. Memmott, H. Justin Hitt, Salt Lake City, for appellee.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 The district court entered an order granting summary judgment in favor of defendant Layton/Okland after plaintiff Llewellyn Jones's heirs ("Jones") failed to timely oppose Layton/Okland's summary judgment motion. Jones moved to vacate the summary judgment order, claiming, among other things, excusable neglect pursuant to rule 60(b) of the Utah Rules of Civil Procedure. The district court denied Jones's motion, and Jones appealed. We affirm the district court's denial.

## BACKGROUND

¶ 2 In 1998, Llewellyn Jones fell to his death while working on a construction project for which Layton/Okland was the general contractor. Jones's heirs filed a wrongful death action against Layton/Okland and Southern Steel Company, the provider of engineering services for the project.

¶ 3 A stay order was imposed in 2001 and lifted in 2005. In December 2006, Layton/Okland filed a motion for summary judgment. The motion was served by mail on Jones's counsel. Jones's counsel requested an extension of the deadline for filing an opposition memorandum to the summary judgment motion, and Layton/Okland's counsel agreed to grant the extension.

¶ 4 In January 2007, after the deadline for the first extension had expired, Jones's counsel sent an email to Layton/Okland's counsel requesting a second extension until February 2, 2007. Jones's counsel and Layton/Okland's counsel then spoke by telephone, and, during the conversation, Jones's counsel claims that Layton/Okland's counsel gave him an open-ended extension of time in which to respond. Jones's counsel subsequently testified that, while his email had "request[ed] an extension ... to a time certain, ... in our phone call, I understood that counsel gave me an open-ended extension." Layton/Okland's counsel denied ever giving Jones's counsel an open-ended extension.

¶ 5 On February 22, 2007—twenty days after the second extended filing deadline had expired—Layton/Okland filed a request to submit its motion for summary judgment for decision and requested that the motion be granted because it was unopposed. Despite being served with a copy of the request,

Jones's counsel did not respond, and the court granted Layton/Okland's motion for summary judgment on March 8, 2007, noting that Jones had failed to respond and that the apparent time for response had expired. The court requested Layton/Okland's counsel to prepare and submit the final order.

¶ 6 Layton/Okland served Jones's counsel with a proposed order on March 12, 2007. Again, Jones did not respond. The court signed and entered the order on April 2, 2007.

¶ 7 On April 17, 2007—five weeks after the district court entered its minute entry granting summary judgment and more than two weeks after the district court entered the final summary judgment order—Jones filed two memoranda with the court. The first was a memorandum opposing Layton/Okland's motion for summary judgment. The second was a memorandum requesting the court to vacate its grant of summary judgment to Layton/Okland and consider the opposition memorandum timely on the ground of excusable neglect. Jones argued that "there [was] reasonable justification or excuse" for Jones's failure to respond to the summary judgment motion because Jones's counsel "understood that counsel gave him an open-ended extension" and because "he was overburdened" based on the "loss of three associates at his office." Jones did not file the requisite motion supporting the second memorandum until ten days later on April 27, 2007.

¶ 8 The district court reviewed Jones's motion and the supporting memoranda, heard oral argument on the issue, and determined that while Jones's counsel "acted in good faith, his omissions were neither a single act of carelessness, nor acts of a minor nature. Counsel repeatedly failed to act as a prudent lawyer would in the same circumstances, although it was within his reasonable control."

The district court then denied Jones's motion, finding no excusable neglect. Jones timely appealed, seeking a reversal of the court's denial.

¶ 9 We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

■ ¶ 10 We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion.[1]

## ANALYSIS

¶ 11 Jones claims that the district court erred in denying his motion to vacate the summary judgment order entered in favor of Layton/Okland by applying the wrong test to determine excusable neglect. While Jones now acknowledges that his counsel was "unquestionably negligent" by failing to timely oppose Layton/Okland's motion, he argues that "the district court placed so much emphasis on the degree of [his counsel's] negligence that it allowed his neglect to eclipse the doctrinal test for excusability."

¶ 12 Jones asserts that our prior decision in *West v. Grand County*[2] contains Utah's "doctrinal test" for excusable neglect and that the district court abused its discretion by failing to give adequate weight to considerations such as the severe prejudice of the denial to Jones, the lack of prejudice to Layton/Okland, and the relatively small length of the delay in context of the prior five-year stay in this case.

¶ 13 Jones also argues that any conception of excusable neglect requiring a rule 60(b) movant to show "due diligence" is circular. Neglect, Jones asserts, is the antithesis of diligence. Thus, he contends that this court's prior expositions of excusable neglect as the exercise of due diligence under the circumstances [3] "convert[ ] the original ne-

---

1. *Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986); *see also Stevens v. LaVerkin City*, 2008 UT App 129, ¶ 17, 183 P.3d 1059.

2. 942 P.2d 337 (Utah 1997).

3. *See, e.g., Airkem Intermountain, Inc. v. Parker*, 30 Utah 2d 65, 513 P.2d 429, 431 (1973) ("The movant must show that he has used *due diligence*

and that he was prevented from appearing by circumstances over which he had no control."); *Peterson v. Crosier*, 29 Utah 235, 81 P. 860, 862 (1905) ("[T]he moving party must show that he has used due diligence to prepare and appear for trial, and present his defense, and that he was prevented from doing so because of some accident, misfortune, or combination of circumstances over which he had no control. . . . If the

glect for which excuse is sought into *res ipsa loquitur* evidence of nonexcusability." Accordingly, Jones claims that "once neglect has been found, courts are to invoke *West's* four-part test and make an equitable determination of excusability governed by an assessment of all of the *West* factors."

¶ 14 Layton/Okland responds by arguing that the *West* factors are inapposite in the context of a motion to set aside a summary judgment. According to Layton/Okland, when a party seeks to have a summary judgment set aside on the ground of excusable neglect, the applicable test is whether the moving party used due diligence and the neglect resulted from circumstances beyond his control. Layton/Okland contends that, because Jones acknowledges that his counsel was "unquestionably negligent" and because nothing beyond his control prevented Jones's counsel from opposing Layton/Okland's summary judgment motion, the district court was correct in denying Jones's rule 60(b) motion.

¶ 15 Layton/Okland also argues that, even in the event that *West* does provide the applicable test for excusable neglect in this case, the district court adequately balanced the relevant considerations and therefore did not abuse its discretion. Referencing our statement from *West* that none of the factors set out in that case are dispositive, but "are helpful in determining the equities of whether a finding of excusable neglect is warranted,"[4] Layton/Okland asserts that the district court "carefully and judiciously exercised its broad discretion in denying" Jones's 60(b) motion.

¶ 16 We begin our analysis by addressing the parties' arguments regarding the appropriate test for determining whether a judgment should be set aside for excusable neglect. We then examine whether, in light of the correct test, the district court abused its discretion in denying Jones's motion.

I. IN DECIDING WHETHER TO SET ASIDE A JUDGMENT FOR EXCUSABLE NEGLECT UNDER RULE 60(b), A DISTRICT COURT HAS BROAD DISCRETION TO CONSIDER AND BALANCE ALL RELEVANT FACTORS IN DETERMINING WHETHER A PARTY HAS EXERCISED SUFFICIENT DILIGENCE TO RELIEVE IT FROM THE FULL CONSEQUENCES OF ITS NEGLECT

¶ 17 Rule 60(b) allows a district court to grant a party relief from a final judgment entered because of "mistake, inadvertence, surprise, or excusable neglect," among other reasons.[5] We have repeatedly emphasized that district courts have "broad discretion" in deciding whether to set aside a judgment for excusable neglect under rule 60(b).[6] This discretion stems from the equitable nature of the excusable neglect determination itself.[7] By their nature, equitable inquiries are designed to be flexible, taking into account all relevant factors in light of the particular circumstances.[8] Equitable inquiries defy distillation into any formal legal test; instead, the question is always whether the particular relief sought is justified under

---

party's negligence is without excuse or justification, he must abide the consequences.").

4. *West*, 942 P.2d at 341.

5. Utah R. Civ. P. 60(b)(1) (2008).

6. *Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 15, 2 P.3d 447 ("We reemphasize that the trial court's inquiry is fundamentally equitable in nature and entails broad discretion."); *E.g.*, *West v. Grand County*, 942 P.2d 337, 339–40 ("[T]he question of whether any given set of facts constitutes 'excusable neglect' ... is highly fact dependent.... For that reason, trial courts must have broad discretion in granting or denying such motions.").

7. *Reisbeck*, 2000 UT 48, ¶ 15, 2 P.3d 447.

8. *See Hughes v. Cafferty*, 2004 UT 22, ¶ 26, 89 P.3d 148 (" 'The distinguishing characteristics of legal remedies are their uniformity, their unchangeableness or fixedness, their lack of adaptation to circumstances, and the technical rules which govern their use.... Equitable remedies, on the other hand, are distinguished by their flexibility, their unlimited variety, [and] their adaptability to circumstances.... The court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.' " (alterations in original) (quoting 1 Spencer W. Symons, *Pomeroy's Equity Jurisprudence* § 109 (5th ed. 1941))).

principles of fundamental fairness in light of the particular facts.[9]

▮ ¶ 18 Accordingly, our recent excusable neglect cases, whether arising under rule 60(b) of the Utah Rules of Civil Procedure or rule 4(e) of the Utah Rules of Appellate Procedure, have emphasized that there is no specific legal test for excusable neglect.[10] For example, in *West*, we set out four factors that are generally relevant to the excusable neglect inquiry, but emphasized that the determination was an equitable one and that no one factor or set of factors was necessarily dispositive.[11] The equitable nature of the excusable neglect determination requires that a district court be free to consider all facts it deems relevant to its decision and weigh them accordingly.

▮ ¶ 19 We recognize that this broad, equitable formulation of the test is in some tension with statements from some of our prior cases, such as *Airkem Intermountain, Inc. v. Parker*, describing the test for excusable neglect as whether "the movant . . . used *due diligence* and . . . was prevented from appearing by circumstances over which he had no control."[12] While the *Airkem* test accurately describes one type of situation in which excusable neglect exists, it does not cover the entire universe of situations. To the extent that our *Airkem* line of cases implied that *only* unavoidable, forced neglect was excusable, we now make clear that is not the case. In order to obtain relief under rule

60(b) on the ground of excusable neglect, a moving party need not necessarily prove that it has been forced into neglect by circumstances beyond its control.

▮ ¶ 20 This does not mean, however, that a moving party is entitled to relief on the ground of excusable neglect anytime such relief might be equitable. We reaffirm the basic principle upon which *Airkem* and similar decisions rested: that excusable neglect requires some evidence of diligence in order to justify relief. In other words, while the district court's discretion to grant relief under rule 60(b) for excusable neglect is broad, it is not unlimited. A district court must exercise its broad discretion in furtherance of the ultimate goal of the excusable neglect inquiry: determining whether the moving party has been sufficiently diligent that the consequences of its neglect may be equitably excused.

¶ 21 Contrary to Jones's position, requiring a party to show "sufficient diligence" in order to obtain relief for excusable neglect does not "convert[ ] the original neglect for which excuse is sought into *res ispa loquitur* evidence of nonexcusability." "Neglect" is not necessarily incompatible with "diligence." To neglect something simply means to fail to do something one was required to do.[13] *Black's Law Dictionary* distinguishes "neglect" from "negligence" as follows:

> "Neglect" is not the same thing as "negligence." In the present connection the

9. *See Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198 (noting that rule 60(b) inquiries are "equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness").

10. *See, e.g., West*, 942 P.2d at 339–40 (under rule 4(e)); *Katz v. Pierce*, 732 P.2d 92, 93 n. 2 (Utah 1986) (under rule 60(b)).

11. 942 P.2d at 341.

12. 513 P.2d 429, 431 (Utah 1973) (emphasis in original); *see also Warren v. Dixon Ranch Co.*, 123 Utah 416, 260 P.2d 741, 743 (1953) ("Discretion must be exercised in furtherance of justice and the court will incline toward granting relief in a doubtful case to the end that the party may have a hearing. However, the movant must show that he has used due diligence and that he was prevented from appearing by circumstances

over which he had no control." (internal citation omitted)); *Peterson v. Crosier*, 29 Utah 235, 81 P. 860, 862 (1905) ("[T]he moving party must show that he has used due diligence to prepare and appear for trial, and present his defense, and that he was prevented from doing so because of some accident, misfortune, or combination of circumstances over which he had no control. If, however, the record discloses mere carelessness, lack of attention, or indifference to his rights on the part of applicant or his counsel, he cannot expect an opportunity to redeem the past. If the party's negligence is without excuse or justification, he must abide the consequences." (internal quotation marks omitted)).

13. *Black's Law Dictionary* defines neglect as "[t]he omission of proper attention to a person or thing, whether inadvertent, negligent, or willful; the act or condition of disregarding." 1061 (8th ed. 2004).

word "neglect" indicates, as a purely objective fact, that a person has not done that which it was his duty to do; it does not indicate the *reason* for this failure. "Negligence," on the other hand, is a subjective state of mind, and it indicates a particular reason why the man has failed to do his duty, namely because he has not kept the performance of the duty in his mind as he ought to have done. A man can "neglect" his duty either intentionally or negligently.[14]

¶ 22 The primary situation in which "neglect" and "diligence" can coexist occurs when events beyond a party's control prevent it from meeting its legal obligations. Yet this is not the only situation in which a party can be both neglectful and diligent. Even where a course of events does not make it strictly impossible for a party to meet its legal obligations, the party's choice to attend to another matter, or even its simple failure to attend to its legal obligation, may be sufficiently diligent and responsible, in light of the attendant circumstances, to justify excusing it from the full consequences of its neglect.[15] Perfect diligence is not required.

¶ 23 But while a party need not be perfectly diligent in order to obtain relief, *some* diligence is necessary. To grant relief on the ground of excusable neglect where a party has exercised no diligence at all, but simply because other equitable considerations might favor it, subverts the purpose of the excusable neglect inquiry. Rule 60(b)'s use of "excusable" as a modifier of "neglect" makes clear that mere neglect alone is an insufficient justification for relief. The neglect must be excusable upon some basis.

¶ 24 It would be impermissible, for example, to grant relief for excusable neglect under rule 60(b) solely because the moving party would be severely prejudiced by a refusal to grant relief while the nonmoving party would only suffer the inconvenience incident to delay of the litigation. Although considerations of prejudice and good faith are relevant to the excusable neglect inquiry, to grant relief under rule 60(b) simply because there might be some equitable basis for doing so, absent any diligence by the moving party, would allow relief based on mere neglect alone. We decline to read the word "excusable" out of the rule in this manner.

¶ 25 Therefore, we hold that, in deciding whether a party is entitled to relief under rule 60(b) on the ground of excusable neglect, a district court must determine whether the moving party has exercised sufficient diligence that it would be equitable to grant him relief from the judgment entered as a result of his neglect. In making this determination, the district court is free to consider all relevant factors and give each factor the weight that it determines it deserves.

¶ 26 Having set out the applicable rules governing determinations of excusable neglect, we now turn to whether the district court abused its discretion in denying Jones's rule 60(b) motion in this case.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING JONES'S MOTION BECAUSE JONES SHOWED NO DILIGENCE THAT WOULD JUSTIFY HIS OWN NEGLECT

¶ 27 We will not reverse a district court's denial of a rule 60(b) motion unless the court has abused its discretion.[16] A district court abuses its discretion only when its "decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice . . . [or] resulted from bias, prejudice, or malice."[17]

---

**14.** *Id.* (quoting J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 108 n. 1 (16th ed. 1952)).

**15.** The district court's equitable discretion extends to fashioning the remedy as well as granting it. In other words, a district court may, as part of exercising its equitable discretion, in appropriate cases, condition the relief from judgment on the moving party's payment of attorney fees incurred by the nonmoving party as a result of the moving party's neglect or satisfaction of any other equitable condition.

**16.** *Katz v. Pierce,* 732 P.2d 92, 93 (Utah 1986).

**17.** 5 Am.Jur.2d *Appellate Review* § 623 (2007) (internal citations omitted).

¶ 28 Here we conclude that the district court did not abuse its discretion in denying Jones's motion because the record is utterly devoid of any diligence by Jones that would justify his neglect in opposing Layton/Okland's summary judgment motion.

¶ 29 While Jones did claim that he believed Layton/Okland had given him an open-ended extension of time in which to respond to its motion, this belief provides no basis upon which to excuse Jones's substantial delay after he was served with Layton/Okland's Notice to Submit for Decision on February 22, 2007. At that point, Jones was fully aware that his extension was not open-ended, yet he failed to act in any way until April 17, 2007—almost two months after he knew that his extension of time to respond had expired. This inexplicable two-month delay in asserting his rights after becoming aware of his neglect is inconsistent with even a minimum level of diligence under the circumstances.

¶ 30 There is simply no basis in the record for us to conclude that the district court abused its discretion by refusing to set aside Layton/Okland's summary judgment for excusable neglect. Accordingly, we uphold the district court's decision to deny Jones's motion.

## CONCLUSION

¶ 31 Because Jones, in failing to oppose Layton/Okland's summary judgment motion, did not exercise even a minimal level of diligence, we affirm the district court's denial of his rule 60(b) motion to set aside the summary judgment.

¶ 32 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.