2011 UT App 231

**Ember HARRISON, Plaintiff and Appellant,**

v.

**Tiffany THURSTON, Tonya Rainey, and John Does 1–10, Defendants and Appellees.**

No. 20100272–CA.

Court of Appeals of Utah.

July 14, 2011.

Elizabeth B. Grimshaw and Aaron J. Prisbrey, St. George, for Appellant.

Gregory J. Sanders and Patrick C. Burt, Salt Lake City, for Appellees.

Before Judges DAVIS, McHUGH, and VOROS.

## MEMORANDUM DECISION

DAVIS, Presiding Judge:

¶ 1 Ember Harrison appeals the district court's denial of her rule 60(b) motion to set aside the dismissal of her case for failure to prosecute. The district court based its denial on its finding that Harrison was represented by counsel when the defendants motion to dismiss was filed and granted, that Harrison herself was not sufficiently diligent in pursuit of her case, and that equitable considerations of fairness weighed in favor of the denial. We disagree and hold that the district court abused its discretion in denying Harrison's rule 60(b) motion.[1]

¶ 2 Harrison retained the services of Matthew T. Graff & Associates to represent her in bringing a negligence claim arising out of a car accident involving Tiffany Thurston that occurred in December 2002.[2] As the district court described, "From the outset, the progress of this case has been slow and halting." Harrison's attorneys[3] failed to meet various discovery deadlines established in the rule 26 scheduling conference, failed to return phone calls to both Harrison and opposing counsel, and generally failed to exercise the level of diligence and care expected of them. While the Graff firm did successfully defeat a summary judgment motion in January 2008, the district court, in its Memorandum Decision and Order on the motion, awarded Thurston her expenses and reasonable attorney fees. In doing so, the district court stated, "[P]laintiff's conduct in pursuit of her own lawsuit has been dilatory and often in derogation of the scheduling order."

¶ 3 On June 9, 2009, Matthew T. Graff was suspended from the practice of law for unrelated conduct, his law practice was essentially closed, and 500 or so case files were transferred by court order to a third-party trustee who was to return the files to Matthew Graff's clients. On June 16, 2009, the trustee mailed a letter to the judge assigned to Harrison's case explaining that there were a "number of matters ... set for hearing on [his] calendar[ ] over the next few weeks" in which Matthew Graff was scheduled to appear and that requests for continuances had been filed for those matters, but that he "may not have caught them all." The trustee explained that he planned to have all of the active case files available for pickup by clients by June 30, 2009.[4] Once Harrison retrieved her file, she met with several attorneys before securing her current counsel of

---

1. As was the case in *Menzies v. Galetka*, 2006 UT 81, 150 P.3d 480, we find it necessary before reciting the facts in this case to

   discuss our review of the district court's factual findings. We have reviewed the factual findings contained in the district court's 60(b) ruling for clear error, as is our practice when reviewing issues of fact. However, our review of the record in this case indicates that the district court clearly erred in numerous factual findings that were crucial to its decision. We therefore decline to recite the facts in a manner consistent with the district court's ruling and instead recite them in accordance with our review of the record.

   *Id.* ¶ 3 (citation omitted).

2. In the same lawsuit, Harrison also alleged a negligence claim against Tonya Rainey, the owner of the vehicle that Thurston was operating at the time of the accident.

3. For reasons explained *infra* ¶¶ 10–11, we refer to Harrison's counsel in the plural and do not make a determination as to which of the Graff brothers was her primary attorney.

4. The actual date the files became available for pickup, the date Harrison was first contacted by the trustee, and the date Harrison actually retrieved her file are unknown. The record does reflect that Harrison was delayed a few days in retrieving her file once it became available due to confusion about the pickup location.

record, who entered a limited appearance on September 3, 2009.

¶ 4 In the meantime, on June 26, 2009, Thurston filed a rule 41(b) motion to dismiss for failure to prosecute and sent a copy of the motion to the office of Matthew T. Graff & Associates, addressed to both Matthew Graff and Mark Graff. The motion went unchallenged. The district court granted the motion on August 13, 2009, in a single page ruling. Through the representation of her new counsel, Harrison filed a rule 60(b) motion to set aside the dismissal and reinstate her case, arguing that she was unrepresented at the time the rule 41(b) motion to dismiss was filed and that Thurston failed to serve Harrison with a Notice To Appear or Appoint Counsel as required by rule 74 of the Utah Rules of Civil Procedure.[5] A hearing was set on the matter for March 4, 2010, at 2:00 p.m.; however, "[d]ue to an unfortunate series of events," Harrison was approximately three minutes late. At 2:02 p.m., the court went on record for fifty-five seconds to rule on the matter. In the order, the court stated simply, "Plaintiff [and] Plaintiff's Counsel [are] not present. Court dismisses [the] matter with prejudice."

■ ¶ 5 Harrison then filed a second rule 60(b) motion to set aside the dismissal, which the court also denied.[6] In the memorandum

accompanying this denial, the district court found that Mark Graff, Matthew Graff's brother and law firm partner, was actually Harrison's attorney, and because Mark had not been suspended, disbarred, or removed from the case, Harrison's argument that she was unrepresented at the time of Thurston's motion to dismiss was unavailing. Additionally, the district court found that although Mark Graff's negligence in handling her case was "extremely troubling," "Ms. Harrison's response to her counsel's conduct was not reasonably diligent." Specifically, the court stated that "the lack of response to [147 phone] calls[,] . . . particularly after sanctions had already been awarded because of the lack of progress in discovery[,] should have at least put [Harrison] on notice that something was amiss." The court also noted that the Graff law firm was not responsible for Harrison's failure to timely appear at the March 2010 hearing on her first rule 60(b) motion. In its conclusion, the district court stated, "[A]lthough . . . [Harrison] has not acted in bad faith, the danger of prejudice to Defendants is great and the length of delay has been both unwarranted and disruptive of the judicial process."

■ ¶ 6 Harrison now appeals the district court's denial of her second rule 60(b) Motion To Set Aside the Order of Dismissal.[7] Har-

---

5. Harrison's first rule 60(b) motion was actually framed as a Motion To Set Aside Default Judgment, not a motion to set aside the dismissal. Because the order Harrison challenges was actually a grant of Thurston's motion to dismiss, we treat Harrison's rule 60(b) motion accordingly.

6. Although rule 60(b) motions for relief are equitable in nature, see Jones v. Layton/Okland, 2009 UT 39, ¶ 17, 214 P.3d 859, successive rule 60(b) motions are generally discouraged, see Amica Mut. Ins. Co. v. Schettler, 768 P.2d 950, 969 (Utah Ct.App.1989) (observing that "[s]uccessive post-judgment motions interfere with" the goal of obtaining finality in the trial court proceedings and prevent "justice [from being] served by permitting the losing party to string out his attack on a judgment over a period of months" (internal quotation marks omitted)). However, the district court did not rule on the merits of Harrison's first rule 60(b) motion, and the propriety of Harrison's two successive rule 60(b) motions has not been challenged on appeal. We therefore do not address the propriety of Harrison's two successive rule 60(b) motions, nor do we address whether Harrison's first rule 60(b) motion was properly dismissed. Instead, we proceed under

the assumption that any deficiencies in the district court's denial of Harrison's first rule 60(b) motion—which was essentially a two-sentence order devoid of any factual findings—were clarified by the findings the district court made in denying Harrison's second rule 60(b) motion. Therefore, our analysis is focused on whether Harrison's second rule 60(b) motion was properly denied.

7. Harrison's rule 60(b) motion seeks relief under either subsection (1) or (6). See Utah R. Civ. P. 60(b)(1), (6) (permitting the district court to set aside an order on grounds of "mistake, inadvertence, surprise, or excusable neglect" or for "any other reason justifying relief from the operation of the judgment"). We review this case under rule 60(b)(1) because that is the analysis the district court seemed to employ. However, our application of this subsection is restricted to the unique facts and circumstances of this case and should not be construed as a determination that relief under rule 60(b)(6) may not be appropriate in this scenario.

rison argues that the denial of her rule 60(b) motion was an abuse of discretion because her original attorney was suspended and Thurston failed to serve a Notice To Appear or Appoint Counsel in violation of rule 74 of the Utah Rules of Civil Procedure.[8] Harrison also argues that the district court's denial of her second rule 60(b) motion was legally deficient because it relied on unfounded inferences into Harrison's state of mind during the Graffs' representation of her case in order to find Harrison, as a client, culpable of dilatory prosecution tactics. We agree that the district court should have granted Harrison's second rule 60(b) motion.

■ ¶ 7 Rule 60(b) affords a district court broad discretion, *see Jones v. Layton/Okland,* 2009 UT 39, ¶ 17, 214 P.3d 859, to relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect," Utah R. Civ. P. 60(b)(1). A determination of excusable neglect under rule 60(b) is equitable in nature, allowing the reviewing court's inquiry "to be flexible, taking into account all relevant factors in light of the particular circumstances ... [to determine] whether the particular relief sought is justified under principles of fundamental fairness in light of the particular facts." *Jones,* 2009 UT 39, ¶ 17, 214 P.3d 859 (footnote omitted). "[T]here is no specific legal test for excusable neglect," but various factors have been established by case law. *Id.* ¶¶ 18–19 (explaining that there is a veritable "universe of situations" in which excusable neglect could exist).

■ ¶ 8 A finding of excusable neglect, however, does require some evidence that "the moving party has exercised sufficient diligence [to justify] grant[ing] him relief from the judgment entered as a result of his neglect." *Id.* ¶ 25. Due diligence is "conduct that is consistent with the manner in which a reasonably prudent [person] under similar circumstances would have acted." *Menzies v. Galetka,* 2006 UT 81, ¶ 72, 150 P.3d 480. In making a determination of due diligence, a district court "is free to consider all relevant factors," including the prejudice

either party will experience as a result of a grant or denial, the good faith of the moving party, and the level of control, if any, the moving party had over the circumstances that resulted in the neglect. *See Jones,* 2009 UT 39, ¶¶ 19, 24–25, 214 P.3d 859; *see also Airkem Intermountain Inc. v. Parker,* 30 Utah 2d 65, 513 P.2d 429, 431 (1973) (holding that a trial court abuses its discretion by basing its rule 60(b) ruling on clearly erroneous factual findings). Additionally, a determination of excusable neglect "must be based on adequate findings of fact and on the law." *Menzies,* 2006 UT 81, ¶ 55, 150 P.3d 480 (internal quotation marks omitted). We review the district court's subsidiary "findings of fact under a clear error standard of review." *See id.*

■■ ¶ 9 Because a district court's ruling on a rule 60(b) motion is entitled to deference, we review that ruling for an abuse of discretion. *See Jones,* 2009 UT 39, ¶ 10, 214 P.3d 859. While the district court has "broad discretion in deciding whether to set aside a judgment," *id.* ¶ 17 (internal quotation marks omitted), "[w]here there is doubt about whether a [judgment] should be set aside, that doubt should be resolved in favor of doing so," *Katz v. Pierce,* 732 P.2d 92, 93 (Utah 1986) (per curiam); *accord Helgesen v. Inyangumia,* 636 P.2d 1079, 1081 (Utah 1981) ("[D]iscretion should be exercised in furtherance of justice and should incline towards granting relief in a doubtful case to the end that the party may have a hearing."). Furthermore, "it is quite uniformly regarded as an abuse of discretion to refuse to vacate a ... judgment where there is reasonable justification or excuse for [a party's] failure to appear, and timely application is made to set it aside." *Central Fin. Co. v. Kynaston,* 22 Utah 2d 284, 452 P.2d 316, 316–18 (1969) (reversing the trial court's denial of the defendants' motion to set aside a judgment against them where defense counsel did not receive notice informing him of the time and date of trial).

---

8. Because of the manner in which we rule on Harrison's rule 60(b) arguments, *see infra* ¶¶ 12–13, it is unnecessary to decide the rule 74(c) issues Harrison has raised. We therefore decline to do so.

¶ 10 Here, the district court based its denial of Harrison's second rule 60(b) motion on its finding that Matthew Graff was conclusively not Harrison's attorney and that Mark Graff was her sole counsel. The district court also supported its denial with its finding that Harrison did not exhibit sufficient diligence in pursuit of her personal injury claim. These findings, however, are not supported by the record. If anything, the record is ambiguous as to which of the individual Graff brothers may have been Harrison's primary counsel. While most of the filings appear to be signed by Mark Graff, some are also signed by Matthew Graff. Nearly all of the correspondence sent from Thurston to Harrison—including letters and certificates of mailing—were addressed to both Graff brothers, and some of those letters actually begin with, "Dear Gentlemen."

¶ 11 Additionally, while it is unclear from the record which Graff was Harrison's lead counsel, the parties have not disputed the fact that the trustee dismantling Matthew Graff's practice was actually in possession of Harrison's file during the crucial period of time when Harrison could have defended against Thurston's motion. Therefore, regardless of which Graff brother was Harrison's counsel, Harrison was, in effect, without counsel during the critical time frame that led to the dismissal of her case. Thus, the district court's finding that Mark Graff was Harrison's primary counsel is unsubstantiated by the record, and its reliance on that finding in rejecting Harrison's rules 60(b) and 74(c) arguments fails to rebut the undisputed facts upon which Harrison seeks relief—that she was, in effect, without counsel when Thurston filed her rule 41(b) motion to dismiss because the trustee had her file and that she remained without counsel when the court ruled on the motion because Harrison did not find a new attorney until three weeks after the dismissal was granted.[9] Therefore, we determine that Harrison's lack of legal representation and the unique facts and circumstances leading up to the effective removal of her attorneys constitute "reasonable justification," *see Central Fin.*, 452 P.2d at 318 (internal quotation marks omitted),

amounting to excusable neglect resulting from circumstances over which Harrison had no control, *cf. Airkem*, 513 P.2d at 431.

¶ 12 The district court also found that the Graffs' neglect and Harrison's own neglect in pursuing her case tipped the balance of the facts against her in its decision to deny her rule 60(b) motion. The district court reasoned that Harrison should have noticed "something was amiss" after sanctions were imposed on her and should have employed other means of communication to contact her attorneys after 147 of her phone calls went largely unanswered. However, the record does not indicate whether Harrison was even aware that sanctions were imposed, nor does the record contain Harrison's call history during the period of time relevant to the dismissal of Harrison's case. Thus, although 147 largely unanswered phone calls could weigh against Harrison's diligence, it has little bearing on the level of diligence Harrison exhibited between the June 26, 2009 filing of the rule 41(b) motion to dismiss and the August 13, 2009 ruling on that motion because the call history in the record only contains phone calls made through April 2009. Additionally, the record does not indicate whether Harrison was even aware of Thurston's motion to dismiss during the relevant time frame. Indeed, because that motion was mailed only to the then-defunct Graff law office, there is a high probability that Harrison was unaware of its existence until she found a new attorney. Likewise, Harrison's undisputed affidavit indicates that she was unaware of various matters pertaining to her case, including her attorneys' failure to respond to numerous discovery requests. Once Harrison obtained her file from the trustee, she visited three attorneys throughout the state in a small window of time in order to find her current counsel of record, further favoring a finding of diligence. Thus, although the district court has broad discretion in ruling on a rule 60(b) motion, we believe the district court's finding of insufficient diligence is unsupported because it ignores undisputed affidavit evidence and actions Harrison took during the rele-

---

9.   As stated previously, *supra* ¶ 3, Harrison did not find a new attorney until September 3, 2009,

three weeks after the court issued its dismissal on August 13, 2009.

vant period of time in which her suit was dismissed, and because it fails to consider the fact that the ultimate root of her problem— Matthew Graff's suspension and the trustee's involvement in taking over her case—were factors beyond her control and not of her creation that no level of diligence on her part could have changed,[10] *see generally Airkem,* 513 P.2d at 431 (explaining that excusable neglect includes situations in which the moving party has no control over the events that resulted in a judgment being rendered against it).

¶ 13 In denying Harrison's second rule 60(b) motion, the district court also considered the "slow and halting" progress of this case over the last nine years and the risk of prejudice to Thurston as the case continues to age. While this is an appropriate inquiry, we believe the other unique facts and circumstances of this case, in addition to the equitable nature of rule 60(b), tip the scale in favor of reversal.[11] *See generally Jones v. Layton/Okland,* 2009 UT 39, ¶ 17, 214 P.3d 859 (explaining the equitable nature of the excusable neglect inquiry); *Menzies v. Galetka,* 2006 UT 81, ¶ 63, 150 P.3d 480 (" '[A] case should, whenever possible, be decided on the merits.' " (quoting *Community Dental Servs. v. Tani,* 282 F.3d 1164, 1170 (9th Cir.2002))); *Katz,* 732 P.2d at 93 ("Where there is doubt about whether a [judgment] should be set aside, that doubt should be resolved in favor of doing so."). Therefore, despite the district court's broad discretion in ruling on a rule 60(b) motion, we determine that in accordance with the equitable nature of rule 60(b), the factual basis on which the court denied Harrison's motion was clearly erroneous and the denial an abuse of discretion. Accordingly, the district court's denial of Harrison's second rule 60(b) motion is reversed.

---

10. Additionally, we do not believe it is appropriate under the circumstances of this case for the court to impute the Graffs' negligence to Harrison when ruling on her rule 60(b) motion. *See Menzies v. Galetka,* 2006 UT 81, ¶¶ 76–77, 150 P.3d 480 (explaining that the general principle that "an attorney's negligence is ordinarily attributable to the client because an attorney acts as an agent for her client" is not always applicable in rule 60(b) determinations where the attor-

¶ 14 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and J. FREDERIC VOROS JR., Judge.

---

ney's actions amount to gross negligence akin to ineffective assistance of counsel in criminal cases).

11. Our decision here is limited to the determination that Harrison's second rule 60(b) motion should have been granted. We reach this conclusion without making any determinations as to the merits of the underlying rule 41(b) ruling.