2021 UT App 92

# THE UTAH COURT OF APPEALS

FREIGHT TEC MANAGEMENT GROUP INC.,
Appellee,
*v.*
CHEMEX INC.,
Appellant.

Opinion
No. 20200096-CA
Filed August 26, 2021

Second District Court, Farmington Department
The Honorable David J. Williams
No. 170700611

Brennan H. Moss, Attorney for Appellant

Stevan R. Baxter and Chase B. Ames,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE RYAN M. HARRIS and SENIOR JUDGE KATE APPLEBY
concurred.[1]

ORME, Judge:

¶1     Freight Tec Management Group, Inc. (Freight Tec) sued
Chemex, Inc. for breach of contract after Chemex refused to pay
for Freight Tec's services in arranging interstate transportation of
two freight loads on Chemex's behalf. Chemex counterclaimed,
asserting that a prior load Freight Tec had arranged to transport
never arrived at its intended destination. Days before the close of
fact discovery, Freight Tec moved for summary judgment on its

---

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

claim and on Chemex's counterclaim. Chemex filed two motions for an extension of time to respond. The district court denied both motions for extension and later granted summary judgment in Freight Tec's favor on all claims. The court further held that Freight Tec was contractually entitled to recover the attorney fees and costs it incurred in pursuing its breach of contract claim against Chemex and in defending against Chemex's counterclaim.

¶2 Chemex appeals, arguing that the court exceeded its discretion in denying its motions for extensions of time. It further contends that the court erred in concluding, on summary judgment, that federal law preempted four of its five claims and in later awarding Freight Tec the attorney fees it incurred in defending against Chemex's counterclaim. We hold that the court acted within its discretion when it denied Chemex's motions for extension. And because Chemex failed to respond to the summary judgment motion below, we hold that it failed to preserve its challenges to the court's grant of summary judgment on appeal. Lastly, we affirm the court's award of attorney fees and award Freight Tec attorney fees incurred on appeal.

BACKGROUND[2]

¶3 Freight Tec is an interstate property broker operating under the authority of the Federal Motor Carrier Safety Administration. "[I]t arranges for one or more qualified motor carriers to physically pick up, transport, and deliver" freight for

---

2. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

its shipping customers. In 2013, Chemex, which is in the business of "wholesale plastics," signed and submitted a credit application so that Freight Tec could perform brokerage services for Chemex on credit. Freight Tec approved the credit application and began brokering freight for Chemex.

¶4    In the credit application, Chemex agreed

> that any and all claims for loss or damage to cargo or theft of cargo and any claims for delay in delivery of freight will be directed to and asserted directly against the carriers arranged by Freight Tec. No such claims will be asserted against Freight Tec, and Freight Tec, who is acting in all respects pertaining hereto as an interstate property broker, will not be liable for any such claims.

The credit application also stated that in addition to agreeing to the provisions contained within its four corners, "Applicant agrees and accepts each of the Terms and Conditions found on the Freight Tec website," followed by the website's internet address. Those Terms and Conditions similarly stated that Freight Tec, "being a broker, has no liability to any person or entity for any loss of or damage to any such freight and that [Freight Tec] has no liability to any person or entity for any delay in delivery of such freight," and that the applicant agrees "to look solely to any carrier arranged by [Freight Tec] to transport any subject freight for recovery of any loss of or damage to such freight or delay in delivery of such freight." Nevertheless, the Terms and Conditions stated that Freight Tec "may, at [its] sole option, assist [Applicant] or others in pursuing claims for loss of or damage to freight or delay in delivery of freight with the carrier."

¶5     Concerning payment and any attorney fees and court costs incurred in collecting on amounts owed, the credit application provided,

> Any such charges not paid to Freight Tec within thirty (30) days from the date of an invoice shall accrue interest at the rate of 1.5% per month. It is further agreed that the Applicant shall pay any collection expenses, including, but not limited to, attorneys fees and court costs, that may become necessary to effect collection from Applicant . . . .

The Terms and Conditions likewise provided for an interest rate of 1.5% per month on unpaid invoices and stated that the applicant will be responsible "for any and all costs incurred by [Freight Tec] in collecting the amounts owing, including, but not limited to, reasonable attorney fees."

¶6     On July 6, 2016, Chemex requested that Freight Tec arrange transportation of a load from Houston, Texas, to Winter Haven, Florida (the Winter Haven load). That same day, Freight Tec entered a broker-carrier agreement with USA Logistics, Inc., in which USA Logistics agreed to transport one or more loads, arranged by Freight Tec. Freight Tec then engaged USA Logistics to transport the Winter Haven load to its intended destination. USA Logistics' records indicated that the Winter Haven load arrived in Winter Haven, Florida, on July 8, 2016, around 8:30 a.m., but it did not have a customer-signed proof of delivery form. On July 20, Freight Tec invoiced Chemex in the amount of $1,900 for its brokerage services on the Winter Haven load. In August, Chemex paid that invoice and also separately paid USA Logistics for freight charges.

¶7     A few months later, Freight Tec arranged transportation of two additional loads on Chemex's behalf: the first from Troy, North Carolina, to Jacksonville, Florida (the Jacksonville load),

and the second from Oyster Creek, Texas, to Birmingham, Alabama (the Birmingham load). Both shipments arrived on time and in good condition. In November, Freight Tec submitted a $1,000 invoice to Chemex for its brokerage services on the Jacksonville load and a $1,150 invoice for its services on the Birmingham load. Chemex refused to pay either invoice. Instead, in December, Chemex demanded $19,180.02 from Freight Tec, claiming that the Winter Haven load had never been delivered.

¶8 Based on Chemex's representations and the lack of a customer-signed proof of delivery form, Freight Tec exercised its option under the Terms and Conditions to sue USA Logistics for the allegedly undelivered Winter Haven load. In March 2018, after USA Logistics provided proof to Freight Tec's satisfaction that the Winter Haven load had indeed been delivered, Freight Tec dismissed USA Logistics from the suit and amended its complaint to name Chemex as a defendant, alleging breach of contract relating to Chemex's refusal to pay for the Jacksonville load and the Birmingham load.[3] Chemex counterclaimed, alleging breach of contract, negligence, negligent misrepresentation, conversion, and breach of fiduciary duty against Freight Tec.

¶9 On August 3, 2018, Chemex served Freight Tec with discovery requests, to which Freight Tec responded on September 7. On November 28, Freight Tec moved for summary judgment on its breach of contract claim against Chemex and on

---

3. Freight Tec also named the consignees of the Jacksonville load and the Birmingham load as defendants in its amended complaint. One consignee never appeared, resulting in entry of default judgment against it, and the district court granted Freight Tec's later motion to dismiss its claims against the other consignee, with prejudice.

Chemex's counterclaim. Fact discovery closed approximately one week later, on December 3.

¶10   On December 12, the day its opposition to Freight Tec's motion for summary judgment was due, Chemex's counsel emailed Freight Tec's counsel requesting an extension until December 21. Chemex did not mention Freight Tec's discovery responses in its request. Freight Tec agreed to the extension. On December 19, two days before its summary judgment response was now due, Chemex sent a letter to Freight Tec stating that while preparing its opposition to the summary judgment motion, "it became apparent that [it was] unable to provide a complete response due to [alleged] deficiencies in" Freight Tec's discovery responses. Freight Tec responded the next day, offering to meet and confer via telephone but stating that "all admissions and denials stand as stated and all documents responsive to [Chemex's] requests have been produced."

¶11   On the day Chemex's summary judgment response was due, it asked the district court for an extension of time pursuant to rule 6(b)(1)(A) of the Utah Rules of Civil Procedure (the First Motion), alleging that Freight Tec "refused to provide important information and documents to Chemex that directly relate to its claims in this case." On April 1, 2019, following argument, the court denied the First Motion on the grounds that Chemex had not demonstrated good cause and that Chemex had failed to avail itself of the proper procedural avenue for such situations under rule 56(d) of the Utah Rules of Civil Procedure.

¶12   Almost two weeks later, Chemex filed another motion for an extension (the Second Motion), this time under rule 6(b)(1)(B) of the Utah Rules of Civil Procedure. The court denied the Second Motion, noting that because Chemex had failed to demonstrate good cause in the First Motion, it also "failed to show entitlement to relief under Rule 6(b)(1)(B)." Furthermore, the court determined that Chemex was not entitled to an

extension under rule 6(b)(1)(B) because it had also failed to show excusable neglect.

¶13     Given its denial of both motions for extension, the court stated that "any opposition to [Freight Tec's] Motion for Summary Judgment will not be considered."[4] But, the court continued, "This ruling does not result in the automatic grant of summary judgment, . . . and the Court will consider the arguments raised in the Motion for Summary Judgment." *See Pepperwood Homeowners Ass'n v. Mitchell*, 2015 UT App 137, ¶ 6, 351 P.3d 844 ("[S]ummary judgment may not be entered against the nonmoving party merely by virtue of a failure to oppose; the rules of civil procedure allow entry of summary judgment against a defaulted party only 'if appropriate.'") (quoting Utah R. Civ. P. 56(e)).

¶14     The court granted summary judgment in Freight Tec's favor on all claims. On Freight Tec's claim for breach of contract, the court held that "[b]ased on the undisputed material facts, Chemex breached the contract in failing to pay Freight Tec all

---

4. After the district court denied both motions for extension but before it entered summary judgment in Freight Tec's favor, Chemex asked the court to take judicial notice that, according to "Internet Archive, a non-profit digital library that regularly archives internet webpages," the Terms and Conditions to which Chemex allegedly agreed did not appear on Freight Tec's website until 2015—approximately two years after it signed and submitted the credit application. The court declined to take the requested judicial notice because "Freight Tec ha[d] provided the Court evidence that the URL for the Terms and Conditions existed as far back as 2013" and because, "on its website, Internet Archive does not guarantee the accuracy or authenticity of the information" it provides.

amounts owed under the [credit application] for Freight Tec's services related to the [Jacksonville load]."[5] Accordingly, the court ordered Chemex to pay $1,000 plus interest as well as attorney fees and costs.

¶15 Turning next to Chemex's counterclaim, the court held that the Federal Aviation Administration Authorization Act (the FAAAA) expressly preempted Chemex's claims for negligence, negligent misrepresentation, and breach of fiduciary duty "because these claims relate to and affect a broker's 'price, route, or service . . . with respect to the transportation of property.'" *See* 49 U.S.C. § 14501(c)(1). The court further held that another federal statute, known as the Carmack Amendment, *see id.* § 14706, impliedly preempted Chemex's claim for conversion because it "provides the exclusive remedy for cargo claims" and "covers claims against interstate freight brokers like Freight Tec." On Chemex's remaining claim for breach of contract, the court held that "[b]ased on the explicit terms of the [credit application and the Terms and Conditions], Chemex cannot hold Freight Tec liable for any claims related to the loss or damage of cargo and all such claims must be directed at [USA Logistics]." Lastly, based on the credit application, which "Chemex admitted that it agreed to . . . in its pleadings," the court granted Freight Tec "all attorney fees and costs incurred" in defending against Chemex's counterclaim.

¶16 During the subsequent hearing to calculate the attorney fees award, Chemex did not challenge the reasonableness of the amount Freight Tech was requesting. Instead, it argued that under the credit application, Freight Tec was contractually limited to recovering attorney fees and costs incurred only in

---

5. It does not appear that the district court addressed Chemex's failure to pay the $1,150 invoice on the Birmingham load, but this issue is not before us on appeal.

pursuing its breach of contract claim against Chemex and that Freight Tec was not entitled to fees associated with defending against Chemex's counterclaim. The court rejected this argument, ruling that Freight Tec was entitled to recover fees and costs associated with defending against the counterclaim because the parties' claims were "inextricably intertwined." The court stated that although "Chemex's counterclaims rested on several legal theories[,] . . . all were asserted to defend against or counter Freight Tec's breach of contract claim and all involved a common core of facts." Accordingly, the court awarded Freight Tec $21,728 in attorney fees and $658.39 in court costs.

¶17  Chemex appeals.

ISSUES AND STANDARDS OF REVIEW

¶18  Chemex raises several issues on appeal. We first address Chemex's claim that the district court exceeded its discretion when it denied Chemex's motions for extensions of time. Because the decision to grant or deny a motion for extension is discretionary, *see Williams v. Department of Corr.*, 2016 UT App 156, ¶ 28, 380 P.3d 340, we will not reverse the court's decision "absent an erroneous conclusion of law or where there is no evidentiary basis for the court's ruling," *Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276 (quotation simplified). *See R4 Constructors LLC v. InBalance Yoga Corp.*, 2020 UT App 169, ¶ 7, 480 P.3d 1075 ("We review a court's decision on extending . . . time . . . for an abuse of discretion, reversing only if there is no reasonable basis for the district court's decision.") (quotation simplified).

¶19  Chemex also challenges the grant of summary judgment to Freight Tec, arguing that the court erred in holding that federal law preempted Chemex's claims and that "Chemex was bound by the Terms and Conditions presented by Freight Tec." Ordinarily, "we review a district court's grant of summary

judgment for correctness and afford no deference to the court's legal conclusions." *Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 6, 286 P.3d 301 (quotation simplified). But we conclude that the court did not exceed its discretion in denying Chemex's motions for extensions of time, *see infra* section I.B, and Freight Tec's motion for summary judgment stood unchallenged below. Accordingly, as discussed in more detail in section II.A, Chemex did not preserve its challenge to the district court's summary judgment ruling and cannot use this appeal to make the arguments it might have made in a memorandum it never filed in the district court.

¶20　Lastly, Chemex challenges the court's award of attorney fees to Freight Tec. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *UDAK Props. LLC v. Canyon Creek Com. Center LLC*, 2021 UT App 16, ¶ 10, 482 P.3d 841 (quotation simplified). Likewise, "whether the [court's] findings are sufficient to support the award is a question of law reviewed for correctness." *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). But the "[c]alculation of reasonable attorney fees is in the sound discretion of the trial court and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (internal citations omitted).

ANALYSIS

I. Motions for Extension of Time

A.　　Jurisdiction

¶21　Before reaching the merits of Chemex's arguments, we must first address whether its notice of appeal conferred jurisdiction on this court to review the district court's orders denying Chemex's two motions for extension. *See Hayes v.*

*Intermountain GeoEnvironmental Services Inc.*, 2018 UT App 223, ¶ 2, 437 P.3d 650 ("The initial inquiry of any court should always be to determine whether the requested action is within its jurisdiction.") (quotation simplified); *McClellan v. State*, 2012 UT App 316, ¶ 5, 290 P.3d 326 ("Whether we have subject matter jurisdiction is a threshold issue, which can be raised at any time and must be addressed before the merits of other claims."). Freight Tec argues that this court lacks jurisdiction to address this issue because Chemex failed to specifically identify the court's orders denying the motions for extension in its notice of appeal.

¶22   Rule 3(d) of the Utah Rules of Appellate Procedure mandates that the notice of appeal include, in relevant part, "the judgment, order, or part thereof being appealed." Utah R. App. P. 3(d)(2). *See Pulham v. Kirsling*, 2019 UT 18, ¶ 23, 443 P.3d 1217 ("The object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case.") (quotation simplified). Our Supreme Court has "held that rule 3(d)'s requirement is jurisdictional." *Pulham*, 2019 UT 18, ¶ 23 (quotation simplified). But "the language of rule 3(d) does not require a party appealing from an entire final judgment to specify each interlocutory order of which the appellant seeks review." *Wilson v. Sanders*, 2019 UT App 126, ¶ 28, 447 P.3d 1240 (quotation simplified). Rather, "where the intermediate order of the court constitutes one link in the chain of rulings leading to [a final judgment], [the appellant] is entitled to challenge it based on a notice of appeal identifying the final order." *North Fork Special Service Dist. v. Bennion*, 2013 UT App 1, ¶ 18, 297 P.3d 624 (quotation simplified). *See Wilson*, 2019 UT App 126, ¶ 28 ("When an appeal is taken from a final judgment, there is no requirement that the notice designate intermediate orders which are to be raised as issues on appeal.") (quotation simplified).

¶23   Here, Chemex stated in its notice of appeal that it was appealing the district court's order denying Chemex's statement

of discovery issues, the summary judgment order, the final judgment, and "all other interim rulings, orders, and minute entries." Thus, although Chemex's notice of appeal did not specifically name the court's orders denying Chemex's two motions for extension, these orders were clearly a "link in the chain of rulings" culminating in written final judgment. *See North Fork*, 2013 UT App 1, ¶ 18 (quotation simplified). Indeed, the court specifically stated that, given its denial of Chemex's motions for extension, it would not consider any opposition to Freight Tec's summary judgment motion—which motion it subsequently granted and based on which it entered final judgment against Chemex. Accordingly, we have jurisdiction to review the court's order denying Chemex's motions for extension and proceed to address the merits of its challenges.[6]

---

6. Freight Tec argues that "Utah courts have moved away from the liberal application of Rule 3(d)." In support of this assertion, Freight Tec cites *Pulham v. Kirsling*, 2019 UT 18, 443 P.3d 1217, and *Wilson v. Sanders*, 2019 UT App 126, 447 P.3d 1240. But these cases involved exceptions to the general rule that "when an appeal is taken from a final judgment, there is no requirement that the notice designate intermediate orders which are to be raised as issues on appeal." *See Wilson*, 2019 UT App 126, ¶ 28 (quotation simplified). Specifically, in *Pulham*, our Supreme Court held that as the appellant identified only a portion of the final order instead of listing the order as a whole, the appellant could not raise issues unrelated to the identified portions of the order because doing so would "disregard the plain language of the notice of appeal and would run contrary to our long-held conviction that the notice of appeal must provide the opposing party with notice of what is being appealed." 2019 UT 18, ¶¶ 24–31. And in *Wilson*, this court held that because the district court denied the relevant motion more than one week after entry of final judgment, the motion was not subsumed in

(continued…)

B.    Merits

¶24    Chemex filed two motions for extension: the First Motion was brought under rule 6(b)(1)(A) of the Utah Rules of Civil Procedure and the Second Motion was brought under rule 6(b)(1)(B). We address the district court's denial of each motion and conclude that the court did not exceed its broad discretion in either instance.

¶25    Rule 6(b)(1) provides,

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:

---

(…continued)

the final judgment and therefore had to be specifically identified in the notice of appeal to confer appellate jurisdiction. 2019 UT App 126, ¶ 29. Neither of these exceptions applies to the case before us.

Freight Tec also cites *State of Utah v. Watson Pharmaceuticals Inc.*, 2019 UT App 31, 440 P.3d 727, in support of its contention that rule 3(d) is now more restrictively applied. But *Watson Pharmaceuticals* is inapposite because it did not address this jurisdictional issue. It merely noted, in a footnote, that the appellant did not appeal the district court's denial of its motion for leave to amend its complaint—filed three months after the district court dismissed the case with prejudice—because the appellant's notice of appeal had not identified the order and, indeed, the appellant twice confirmed during oral argument that it was not appealing that denial. *See id.* ¶¶ 9, 22 n.8.

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

¶26    As relevant to both parts of rule 6(b)(1), good cause "pertains to special circumstances that are essentially beyond a party's control."[7] *Reisbeck v. HCA Health Services of Utah, Inc.*,

---

7. In defining "good cause" and "excusable neglect," we look to the analogous context of rule 4(e) of the Utah Rules of Appellate Procedure. *Compare* Utah R. App. P. 4(e) (providing that prior to the expiration of the deadline to file a notice of appeal, "[t]he trial court, upon a showing of good cause, may extend the time for filing a notice of appeal upon motion," and that within 30 days after the deadline to file a notice of appeal, "[t]he trial court, upon a showing of good cause or excusable neglect, may extend the time for filing a notice of appeal upon motion"), *with* Utah R. Civ. P. 6(b)(1) (providing that "the court may, for good cause, extend" a deadline if done prior to the expiration of the deadline and, if done after expiration of the deadline, "the court may [do so] for good cause" *and* upon a showing of "excusable neglect"). *Cf. Jones v. Layton/Okland*, 2009 UT 39, ¶ 18, 214 P.3d 859 (applying the standard for excusable neglect as articulated under rule 4(e) of the Utah Rules of Appellate Procedure to rule 60(b) of the Utah Rules of Civil Procedure). We likewise turn to interpretations of the similarly worded rule 6(b)(1) of the Federal Rules of Civil Procedure for guidance. *See Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 40 n.8, 297 P.3d 599 ("Interpretations of the Federal Rules of Civil Procedure are persuasive where, as here, the Utah Rules of Civil

(continued…)

2000 UT 48, ¶ 13, 2 P.3d 447 (emphasis omitted). It "comes into play in situations in which there is no fault—excusable or otherwise." *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (quotation simplified). Accordingly, "it requires the moving party to show the deadline cannot be met despite the movant's diligent efforts." *Id.* at 701 (quotation simplified).

¶27    As relevant to rule 6(b)(1)(B), excusable neglect "is an admittedly neglectful delay that is nevertheless excused by special circumstances." *Reisbeck*, 2000 UT 48, ¶ 13 (emphasis omitted). Our Supreme Court has identified four factors that are relevant to the excusable neglect inquiry: "(i) the danger of prejudice to the nonmoving party, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith." *West v. Grand County*, 942 P.2d 337, 340–41 (Utah 1997) (quotation simplified). *See Stoddard v. Smith*, 2001 UT 47, ¶¶ 24–25, 27 P.3d 546. But our Supreme Court has emphasized that the excusable neglect determination is so fact intensive and "so varied and complex that no rule adequately addressing the relevance of all these facts can be spelled out." *West*, 942 P.2d at 340 (quotation simplified). *See Jones v. Layton/Okland*, 2009 UT 39, ¶ 18, 214 P.3d 859 ("[T]here is no specific legal test for excusable neglect."). At its core, "excusable neglect requires some evidence of diligence in order to justify relief." *Jones*, 2009 UT 39, ¶ 20. Thus, "where a party or party's attorney was concededly neglectful, the court must determine whether that neglect should, on balance, be excused." *Reisbeck*, 2000 UT 48, ¶ 15. This "inquiry is fundamentally equitable in nature and entails broad

---

(…continued)
Procedure are substantially similar to the federal rules.") (quotation simplified).

discretion." *Id.* But "[a] district court must exercise its broad discretion in furtherance of the ultimate goal of the excusable neglect inquiry: determining whether the moving party has been sufficiently diligent that the consequences of its neglect may be equitably excused." *Jones*, 2009 UT 39, ¶ 20.

¶28 In the First Motion, Chemex argued that good cause existed because Freight Tec "refused to provide important information and documents to Chemex that directly relate to the claims in this case." After "reviewing the timeline of the case," the district court concluded that good cause did not exist. Specifically, Chemex asserted that it did not discover the deficiencies in Freight Tec's responses to its discovery requests until it began preparing its opposition to Freight Tec's motion for summary judgment. But the court noted that Freight Tec served its responses to Chemex three months prior to the close of fact discovery and Freight Tec moved for summary judgment "just days before that deadline." The court also found it relevant that when Chemex first requested an extension from Freight Tec—nine days after the close of fact discovery and the day Chemex's response to the summary judgment motion was due— Chemex did not raise any issues concerning Freight Tec's discovery responses. Indeed, Chemex did not raise those issues for another week. Accordingly, the court stated that "it appears that Chemex did not even analyze [Freight Tec's] discovery responses until more than three months after they were served and approximately two weeks after the close of fact discovery." And because "Chemex has never offered an explanation regarding the delay in analyzing and raising the discovery issues," the court held that it could not make a finding of good cause and denied the First Motion.

¶29 In ruling on the Second Motion, filed eleven days after the court's denial of the First Motion, the court noted that because Chemex had not demonstrated good cause in the First Motion, it also "failed to show entitlement to relief under Rule 6(b)(1)(B)."

In any event, the court additionally determined that Chemex had not established excusable neglect. Focusing on the third factor relevant to the excusable neglect inquiry, that is, the reason for the delay, *see West*, 942 P.2d at 340–41, the court reiterated that "Chemex has never provided an explanation for its delay in reviewing and analyzing [Freight Tec's] discovery responses." Although Chemex attributed its delay in filing the Second Motion to waiting for the court to rule on the First Motion, the court noted "that had Chemex raised the discovery issues in a timely manner or had Chemex responded to the Motion for Summary Judgment pursuant to Rule 56(d), these issues could have been resolved in the ordinary course in the case." And because Chemex "failed to provide any explanation justifying its delays in this case," the court declined to analyze the remaining relevant factors, stating that "[e]ven if those factors weighed in favor of Chemex, they would not outweigh the fact that Chemex has not provided any justification for its delay."

¶30　Chemex argues that the district court abused its discretion in denying the First Motion because Chemex, "in good faith, . . . sought an extension to address discovery deficiencies it felt were necessary to oppose Freight Tec's motion for summary judgment." Quoting *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016), Chemex argues that "[g]ood cause 'should be liberally construed to advance the goal of trying each case on the merits.'" Chemex asserts that it satisfied this liberal standard because it did not have the opportunity to "evaluate the matter as a whole" and discover the deficiencies in Freight Tec's responses until it began preparing to oppose Freight Tec's summary judgment motion.[8]

---

8. Chemex additionally argues that "to the extent the district court relied on counsel's alleged carelessness to deny the motion, such a consideration alone constitutes an abuse of discretion." In

(continued…)

¶31 But Chemex does not grapple with the crux of the district court's reasoning for why Chemex failed to show good cause.

---

(…continued)

support, Chemex cites *GNB, Inc. v. Tropex, Inc.*, No. 87-1637, 1988 WL 60618 (4th Cir. June 3, 1988) (per curiam). In that case, the defendants failed to timely oppose a motion for summary judgment. *Id.* at *1. In denying the defendants' motion for an extension, the district court found that their counsel was inexcusably negligent but made no finding as to whether the defendants themselves were negligent. *Id.* at *2. The Fourth Circuit Court of Appeals reversed, in part because of the lack of findings that the "defendants, and not their counsel, were responsible for the failure to file the opposition to the summary judgment motion." *Id.*

As an initial matter, *GNB* is inapplicable to the denial of the First Motion because the defendants in *GNB* filed their motion for extension *after* the deadline to oppose the summary judgment motion had expired, thus—as demonstrated by the court's discussion of negligence—necessarily implicating the federal equivalent of Utah rule 6(b)(1)(B) in effect at that time and not the federal equivalent of rule 6(b)(1)(A), which deals with good cause. And in any event, in Utah a court does not necessarily abuse its discretion by denying a motion for extension in cases where the fault for the delay rested solely with a party's attorney. Instead, "where a party *or a party's attorney* was concededly neglectful, the court must determine whether that neglect should, on balance, be excused." *Reisbeck v. HCA Health Services of Utah, Inc.*, 2000 UT 48, ¶ 15, 2 P.3d 447 (emphasis added). *See generally Menzies v. Galetka*, 2006 UT 81, ¶ 76, 150 P.3d 480 ("Under the American representative system of litigation, a party voluntarily chooses her attorney and therefore is generally bound by the acts or omissions of his or her attorney.").

The court noted that the First Motion—filed the day Chemex's opposition to Freight Tec's summary judgment motion was due—did not mention the deficient discovery responses. Indeed, Chemex did not make that argument for another seven days. Based on this, the court noted that it appeared Chemex had not analyzed the discovery responses "until more than three months after they were served and approximately two weeks after the close of fact discovery." The court noted that "Chemex has never offered an explanation regarding the delay in analyzing and raising the discovery issues," without which the court could not make a determination of good cause.

¶32    We agree with the court that Chemex's explanation that it did not have an opportunity to closely examine Freight Tec's responses until it began to prepare its response to the summary judgment motion does not sufficiently address the court's stated point of concern, because it seems that Chemex had not reviewed the discovery responses by the date its response to summary judgment was originally due, that is, when it requested an extension of time from Freight Tec. Even applying a liberal standard, in light of this absence of sufficient explanation for the cause of Chemex's delay in reviewing the discovery responses as part of its preparation to oppose summary judgment, the court did not exceed its discretion in concluding that Chemex had not shown good cause for an extension and in denying the First Motion on that basis. *See Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (stating that although "Rule 6(b)(1) should be liberally construed to advance the goal of trying each case on the merits[,] . . . an enlargement of the time period is by no means a matter of right") (quotation simplified).

¶33    Regarding the Second Motion, Chemex argues that "the district court abused its discretion because it narrowly interpreted excusable neglect to arise only if circumstances out of Chemex's control delayed its opposition to Freight Tec's

summary judgment motion." Chemex contends that the court improperly "focused on Chemex's delayed analysis of Freight Tec's discovery responses from months before" instead of evaluating the "minimal" eleven-day delay between the court's denial of the First Motion and Chemex's filing of the Second Motion. Because we conclude the court did not exceed its discretion in finding that Chemex had not shown good cause, we do not reach this challenge to the court's excusable neglect determination.

¶34 By its plain terms, rule 6(b)(1)(B) requires a moving party to demonstrate good cause *and* excusable neglect. *See* Utah R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, *for good cause*, extend the time . . . on motion made after the time has expired *if* the party failed to act because of *excusable neglect*.") (emphasis added). Although interrelated,[9] the two standards are distinct. Accordingly, irrespective of whether Chemex was able to establish excusable neglect, the district court acted within its discretion when it denied the Second Motion because Chemex had not established the requisite good cause.[10]

---

9. For example, depending on the facts of a case, each standard may implicate a showing of diligence and of circumstances beyond the moving party's control. *See supra* ¶¶ 26–27.

10. Chemex also argues that "the court abused its discretion when it took umbrage [at] Chemex seeking relief under Rule 6(b) rather than Rule 56(d)." *See* Utah R. Civ. P. 56(d) ("If a nonmoving party shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it without prejudice; (2) allow time to obtain affidavits or declarations or to take discovery; or

(continued…)

## II. Summary Judgment

### A. Preservation

¶35 Chemex contends that the district court erred in concluding that federal law preempted Chemex's counterclaim against Freight Tec. But because Chemex did not properly oppose Freight Tec's motion for summary judgment, it has not preserved this argument for appeal.

¶36 "Our appellate system has developed along the adversarial model, which is founded on the premise that parties are in the best position to select and argue the issues most advantageous to themselves, while allowing an impartial tribunal to determine the merits of those arguments." *State v. Johnson*, 2017 UT 76, ¶ 8, 416 P.3d 443. Under this system, "parties, not the courts, have the duty to identify legal issues and bring arguments to adjudicate their respective rights and obligations. It is through fulfilling this duty in a district court that parties also fulfill their duty to preserve arguments for appeal." *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 23, 427 P.3d 338 (quotation simplified). In other words, "an issue is preserved for appeal when it has been presented to the district

---

(…continued)
(3) issue any other appropriate order."). It argues that because a motion brought under rule 56(d) "is not among those specifically excluded from Rule 6(b), the court had authority to extend the time for [Chemex] to file its summary judgment opposition." *See* Utah R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d) and (e), and 60(c)."). Because we have already determined that the district court did not abuse its discretion in denying the First Motion and the Second Motion for lack of good cause, we need not address this argument further.

court in such a way that the court has an opportunity to rule on it." *Johnson*, 2017 UT 76, ¶ 15 (quotation simplified). An appellate court will ordinarily not reach the merits of an unpreserved argument absent a valid exception to the preservation rule. *See id.*

¶37 Here, Chemex did not preserve its challenges to the summary judgment rulings because it did not oppose Freight Tec's motion for summary judgment and, therefore, did not "bring arguments to adjudicate [its] respective rights and obligations." *See True*, 2018 UT App 86, ¶ 23 (quotation simplified). *See also Tronson v. Eagar*, 2019 UT App 212, ¶ 18, 457 P.3d 407 ("[A] nonmovant who fails to oppose a summary judgment motion has thereby failed to preserve any objection to the district court's entry of summary judgment against it, and . . . on appeal, any challenge to the district court's entry of an unopposed summary judgment motion would be reviewed only for plain error."); *Stevens v. Wall*, 2011 UT App 372, ¶ 4, 264 P.3d 568 (per curiam) (holding that because the appellant "failed to oppose the summary judgment motion in the trial court" and therefore "did not raise any challenge to the motion below[,] . . . he ha[d] waived the challenge to the summary judgment on appeal").

¶38 Chemex argues that the issue is preserved because, "regardless of Chemex's inability to oppose the motion" for summary judgment, the district court "had the opportunity to rule on preemption" when it granted summary judgment to Freight Tec. But, our Supreme Court has clarified, to present a district court with an opportunity to rule on an issue for preservation purposes, "the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *Johnson*, 2017 UT 76, ¶ 15 (quotation simplified). Because Chemex did not succeed in submitting its opposition to the summary judgment motion, it did not raise legal grounds to deny summary

judgment, much less introduce legal authority in support of those arguments. Accordingly, Chemex's challenges to the district court's preemption rulings are unpreserved and, absent a valid exception to our preservation rule, Chemex may not substitute its appellate brief for the memorandum in opposition to summary judgment that it was precluded from submitting to the district court.

## B.    Plain Error

¶39    Chemex argues that even if it did not preserve its preemption arguments in the district court, the plain error exception to the preservation rule applies.[11] "Under plain error review, we will reverse only if (i) an error exists, (ii) the error should have been obvious to the trial court, and (iii) the error is harmful." *Cook Martin Poulson PC v. Smith*, 2020 UT App 57, ¶ 19, 464 P.3d 541 (quotation simplified). Without addressing the first and third prongs of the plain error inquiry, we conclude that Chemex's argument fails because any alleged error in the court's preemption analysis was far from "obvious."

¶40    Concerning its claim for conversion, Chemex argues that "[a]lthough there is no controlling [Utah] law on the issue, it should have been apparent to the district court that the Carmack

---

11. "Our supreme court has taken pains to point out that it has not endorsed the ongoing viability of plain error review in civil cases, nor has it repudiated it. In the meantime, until our supreme court answers this question, Utah appellate courts have sometimes applied plain error review in civil cases in which neither party challenges its application, and we do so here without opining on the propriety of such review." *Tronson v. Eagar*, 2019 UT App 212, ¶ 18 n.7, 457 P.3d 407 (quotation simplified).

Amendment[12] does not apply to brokers, like Freight Tec." Chemex cites several federal district court cases in support of this contention. *See, e.g., ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 994–95 (D. Ariz. 2014); *Huntington Operating Corp. v. Sybonney Express, Inc.*, Civil Action No. H-08-781, 2009 WL 2423860, at *3 (S.D. Tex. Aug. 3, 2009); *Chubb Group of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1068–69 (C.D. Cal. 2002). But the district court cited other federal district court cases in support of its conclusion "that the Carmack Amendment covers claims against interstate freight brokers like Freight Tec." *See, e.g., Ameriswiss Tech., LLC v. Midway Line of Ill., Inc.*, 888 F. Supp. 2d 197, 205 (D.N.H. 2012); *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 301 (D.R.I. 2007). Thus, there is a split of authority among federal courts as to whether the Carmack Amendment applies to brokers.

¶41   "An error is obvious if the law on the area was sufficiently clear or plainly settled." *State v. Larsen*, 2005 UT App 201, ¶ 5, 113 P.3d 998 (quotation simplified). Here, based on the divided federal authority, it is not "plainly settled" whether the Carmack Amendment applies to brokers. Therefore, any error in the court's analysis was far from obvious, and the plain error exception to the preservation rule does not apply to this argument.

¶42 Regarding its claims for negligence, negligent misrepresentation, and breach of fiduciary duty, Chemex argues that the district court's conclusion that the FAAAA preempted these tort claims was obvious error because "the FAAAA scope

---

12. "In actions seeking damages for the loss of property shipped in interstate commerce by a common carrier under a receipt or bill of lading, the Carmack Amendment is the shipper's sole remedy." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir. 1998). *See* 49 U.S.C. § 14706(a)(1).

and purpose was to curb state laws relating to carrier prices, routes, and services,"[13] and here "it is undisputed that [Chemex's] causes of action are centered on issues surrounding interstate travel and . . . are no more than tenuously related to any carrier prices, rout[e]s, or services." But like the question of whether the Carmack Amendment applies to brokers, federal authority is split on whether tort claims sufficiently relate to the price, route, or service of a carrier.

¶43 The court cited several federal court cases in support of its holding that Chemex's tort claims for negligence, negligent misrepresentation, and breach of fiduciary duty relate to and affect the "price, route, or service . . . with respect to the transportation of property," 49 U.S.C. § 14501(c)(1), and are therefore preempted by the FAAAA, *see, e.g.*, *Belnick, Inc. v TBB Global Logistics, Inc.*, 106 F. Supp. 3d 551, 559–62 (M.D. Pa. 2015); *Ameriswiss Tech.*, 888 F. Supp. 2d at 205–08; *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638, 641–43 (N.D. Tex 2010). Freight Tec has also cited additional authority supporting this conclusion. *See, e.g.*, *Delta Stone Prods. v. Xpertfreight*, 304 F. Supp. 3d 1119, 1123 (D. Utah 2018); *Yellow Transp., Inc. v. DM Transp. Mgmt. Services, Inc.*, No. CIV.A.2:06CV1517-LDD, 2006 WL 2871745, at *3 (E.D. Pa. July 13, 2006). Chemex asserts that "many district courts of equal authority have held that negligence

---

13. The relevant provision of the FAAAA provides,

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

claims are not preempted by the FAAAA because holding a broker to a minimum standard of care does not intrude or contradict the Congressional intent animating the FAAAA," and Chemex provides several examples in support of this assertion. *See, e.g.*, *Nyswaner v. C.H. Robinson Worldwide Inc.*, 353 F. Supp. 3d 892, 895 (D. Ariz. 2019); *Complete Coach Works v. Landstar Ranger, Inc.*, No. CV-10-1383-DSF(OPx), 2011 WL 9206170, at *1–2 (C.D. Cal. Apr. 13, 2011).

¶44 Again, this split in authority renders the question of whether the FAAAA preempts these state tort claims far from "plainly settled," and therefore any alleged error in the court's analysis was not obvious. *See Larsen*, 2005 UT App 201, ¶ 5 (quotation simplified). Accordingly, the plain error exception to the preservation rule does not apply to this argument.

C.    Judicial Notice

¶45 Chemex also argues that the court erred in granting summary judgment on Freight Tec's breach of contract claim because there "is a question of material fact whether the terms and conditions presented by Freight Tec were available at the time Chemex signed" the credit application. Chemex asserts that "Freight Tec's claim for breach of contract is dependent upon whether Chemex agreed to the [Terms and Conditions]" that the credit application—which Chemex signed in 2013—incorporated by reference and for which it provided a website address. Freight Tec included a copy of the Terms and Conditions in its motion for summary judgment, but Chemex contends that Freight Tec "fail[ed] to establish that the terms and conditions were available to [Chemex] at the time it signed the credit application" because the Terms and Conditions the court relied on were allegedly copyrighted in 2014 and, according to Internet Archive, did not appear on Freight Tec's website until 2015. Although Chemex acknowledges that "Freight Tec's facts were undisputed due to the Court's denial of Chemex's motion[s] for

extension," it argues that the court should have taken judicial notice that the Terms and Conditions Freight Tec presented were copyrighted and appeared on the website after Chemex signed and submitted the credit application. *See supra* note 4.

¶46    Even assuming, without deciding, that the court erred in declining to take judicial notice of those facts, we conclude that the error was harmless because Freight Tec would have nonetheless prevailed on summary judgment. Although Chemex disputes the authenticity of the Terms and Conditions that Freight Tec included in its motion for summary judgment, Chemex's answer admitted that it signed the credit application. It further admitted "that it entered into an agreement with [Freight Tec] to ship, or arrange[] for shipment [of], certain loads for Chemex." Given that Chemex does not contest that it entered into a contract with Freight Tec and that it was uncontested on summary judgment that Chemex did not compensate Freight Tec for arranging for the shipment of the Jacksonville load, it is unclear how Chemex would have withstood summary judgment even if the court had disregarded the Terms and Conditions. *See America West Bank Members, LC v. Utah*, 2014 UT 49, ¶ 15, 342 P.3d 224 ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.") (quotation simplified). Indeed, *both* the credit application and the Terms and Conditions provided for an interest rate of 1.5% per month for any unpaid invoices and stated that Freight Tec would be entitled to collection expenses, including attorney fees and costs. *See supra* ¶ 5. Furthermore, to the extent that Chemex challenges the court's grant of summary judgment to Freight Tec on Chemex's claim for breach of contract, the credit application likewise contained a provision in which Chemex agreed to pursue any claims for late delivery or non-delivery of a load against the motor carrier and not Freight Tec. *See supra* ¶ 4.

### III. Attorney Fees

¶47 Lastly, Chemex challenges the district court's award to Freight Tec of attorney fees and costs incurred in defending against Chemex's non-contractual claims.[14]

¶48 First, Chemex argues that the court erred in concluding that its claims were "inextricably intertwined" with Freight Tec's claim for breach of contract. Quoting *Foote v. Clark*, 962 P.2d 52 (Utah 1998), Chemex asserts that "'[t]he language of the contract does not permit assessing fees' against Chemex for Freight Tec's successful defense of Chemex's noncontractual claims brought concerning the [Winter Haven load]." *See id.* at 56.

¶49 "If provided for by contract, attorney fees are awarded in accordance with the terms of that contract." *Rapoport v. Four Lakes Village Homeowners Ass'n, Inc.*, 2013 UT App 78, ¶ 22, 300 P.3d 327 (quotation simplified). Furthermore, "when a plaintiff brings multiple claims involving a common core of facts and related legal theories, and prevails on at least some of its claims, it is entitled to compensation for all attorney fees reasonably incurred in the litigation." *Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 35, 241 P.3d 375 (quotation simplified). This rule has been "repeatedly extended . . . to award attorney fees for counterclaims when the counterclaim was based on related legal theories involving a common core of facts." *Id.* (quotation simplified). *See Dejavue, Inc. v. U.S. Energy Corp.*, 1999 UT App 355, ¶ 21, 993 P.2d 222 (affirming the district court's award of attorney fees to a party for successfully defending against a breach of contract claim and for prevailing on its tort counterclaims that were "based on related legal theories

---

14. Chemex does not challenge the district court's award of attorney fees to Freight Tec for fees incurred in defending against Chemex's counterclaim for breach of contract.

involving a common core of facts" applicable also to the breach of contract claim).

¶50    The relevant provision under the credit application, with our emphasis, is as follows:

> It is . . . agreed that the Applicant shall pay any collection expenses, including, but not limited to, attorneys fees and court costs, *that may become necessary to effect collection* from [Chemex.]

In concluding that Chemex's tort claims and Freight Tec's breach of contract claim were "inextricably intertwined," the district court stated that although "Chemex's counterclaims rested on several legal theories[,] . . . all were asserted to defend against or counter Freight Tec's breach of contract claim and all involved the same common core of facts." We agree.

¶51    Chemex's answer and counterclaim support the court's conclusions. In bringing its counterclaim against Freight Tec, Chemex acknowledged that its counterclaim and Freight Tec's breach of contract claim involved a common core of facts when it stated, "This Counterclaim arises out of the same averments, and transactions and occurrences as [Freight Tec's] Complaint." And in its answer, referring to the alleged non-delivery of the Winter Haven load—which formed the basis for its counterclaim—Chemex asserted, as an affirmative defense, that "[t]he damages, if any, which were allegedly sustained by [Freight Tec] as a result of the acts complained of in the Complaint were caused in whole or in part or were contributed to by reason of the acts, omissions, negligence, and/or intentional misconduct of [Freight Tec]." Thus, to succeed on its breach of contract claim against Chemex, Freight Tec necessarily needed to defend against Chemex's claims that were based in tort. Accordingly, Freight Tec's defense against the counterclaim became "necessary to

effect collection from [Chemex]" and was therefore permitted under the plain terms of the credit application.

¶52 Next, Chemex argues that "[b]ecause the district court did not require Freight Tec to allocate its fees by [compensable and noncompensable] claim, there is insufficient evidence to support the award, and it cannot stand." *See Jensen v. Sawyers*, 2005 UT 81, ¶ 132, 130 P.3d 325 (stating that failure to allocate fees between successful claims, unsuccessful claims, and claims to which there is no entitlement to attorney fees "makes it difficult, if not impossible, for the trial court to award the moving party fees because there is insufficient evidence to support the award"). Because we conclude that Freight Tec was entitled to recover attorney fees and costs both in bringing its breach of contract claim and in defending against Chemex's counterclaim, such an allocation is unnecessary as all claims fall under the same category of compensability. *See KB Squared LLC v. Memorial Bldg. LLC*, 2019 UT App 61, ¶¶ 33–34, 442 P.3d 1168.

¶53 Finally, again quoting *Foote v. Clark*, 962 P.2d 52, 56 (Utah 1998), Chemex argues that the court's award is supported by insufficient findings of fact because "the Court did not consider any of the *Cottonwood Mall* factors in assessing the reasonableness of the fee award nor did it set forth any other 'steps of its evaluation.'" *See Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269 (Utah 1992) (listing "several factors that should be assessed in determining the reasonableness of attorney fees"). In determining the reasonableness of the requested fees, the court stated that it reviewed the invoices for attorney fees attached to the affidavit submitted by counsel for Freight Tec and found that "[t]hey were specific enough to allow the Court to look at what was done in each case" and it concluded that they were "good evidence of the fees that were incurred and why." Accordingly, because the court's award of fees was supported by affidavit, and because Chemex did not challenge the reasonableness of any itemized fee or cost Freight Tec presented to the court when

given the opportunity, the court did not abuse its discretion in ordering Chemex to pay $21,728 in attorney fees and $658.39 in court costs. *Cf. Poulsen v. Frear*, 946 P.2d 738, 743 (Utah Ct. App. 1997) ("[F]ees cannot be awarded unless supported by an affidavit and unless appellant has a chance to challenge the reasonableness of the fees[.]").

## IV. Fees on Appeal

¶54    Freight Tec seeks an award of attorney fees incurred on appeal. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Telegraph Tower LLC v. Century Mortgage LLC*, 2016 UT App 102, ¶ 52, 376 P.3d 333 (quotation simplified). Accordingly, Freight Tec is entitled to its attorney fees reasonably incurred on appeal, and we remand to the district court to calculate the amount of the award.

## CONCLUSION

¶55    The district court acted within its discretion when it denied Chemex's two motions for an extension to file its opposition to Freight Tec's motion for summary judgment. Because Chemex did not effectively oppose Freight Tec's motion in the district court, its challenges to the court's grant of summary judgment are unpreserved, and we review them only for plain error. And we conclude that the district court did not plainly err. We also determine that any error in the district court's failing to take judicial notice was harmless. Finally, we affirm the court's award of attorney fees to Freight Tec. We additionally authorize an award of attorney fees to Freight Tec for attorney fees incurred on appeal and remand to the district court to determine an appropriate amount for such fees.

¶56    Affirmed.

—————